# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2163

_____

Russell Bucklew

*Plaintiff - Appellant*

v.

George A. Lombardi, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 9, 2014
Filed: March 6, 2015

_____

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, SMITH, COLLOTON, GRUENDER, SHEPHERD, and KELLY, Circuit Judges, *En Banc*.

_____

LOKEN, Circuit Judge.

Russell Bucklew was convicted in state court of murder, kidnapping, and rape and sentenced to death. After Missouri courts denied post-conviction relief, we affirmed the district court's denial of Bucklew's petition for a federal writ of habeas corpus. Bucklew v. Luebbers, 436 F.3d 1010, 1013-15 (8th Cir. 2006). This appeal concerns his § 1983 challenge to Missouri's lethal injection method of execution.

# I.

On April 9, 2014, the Supreme Court of Missouri issued a writ of execution, setting Bucklew's execution date as May 21, 2014. At that time, Bucklew was a plaintiff in a pending § 1983 action that included a facial Eighth Amendment challenge to Missouri's method of execution. The district court tentatively dismissed that action on May 2. Zink v. Lombardi, No. 12-04209 (W.D. Mo. May 2, 2014). Bucklew filed this § 1983 action on May 9, primarily asserting that the method of lethal injection by which Missouri plans to execute him would violate his Eighth Amendment right to be free of cruel and unusual punishment because of the unique risk that his serious medical condition, called cavernous hemangioma, will result in excruciating pain. He also sought a preliminary injunction and a stay of execution.

On May 16, the district court entered a final order dismissing the complaint in Zink. Plaintiffs including Bucklew appealed. On May 19, the district court entered the Order being appealed in this action, denying Bucklew's motion for a stay of execution and an injunction and dismissing the Eighth Amendment claim, *sua sponte*. Bucklew v. Lombardi, No. 14-8000 (W.D. Mo. May 19, 2014). Bucklew appealed, raising Eighth Amendment and due process issues, and sought a stay of the May 21 execution.[1] A divided panel of this court granted a stay. Bucklew v. Lombardi, 565

---

[1] Appellees argue on appeal that Bucklew's claims are barred by the claim and issue preclusion effect of the district court's final judgment in Zink. Bucklew, an original plaintiff in the Zink action, filed this separate as-applied action on May 9, 2014, long after he joined the facial attack on Missouri's execution protocol in Zink. The district court entered its final judgment in Zink on May 16. Appellees argue that Bucklew's as-applied challenge is precluded by the final judgment in Zink because it could have been raised in Zink. "The preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S. 880, 891 (2008). The general rule is that, as between actions pending at the same time, the first judgment to become final is conclusive in the other action as *res judicata*, even if the first judgment was not final when the second action was filed. See Chicago, R.I. &

F. App'x 562 (8th Cir. 2014). The court en banc vacated the panel's stay and denied a stay of execution. Bucklew then applied to the Supreme Court for a stay of execution. On May 21, the Supreme Court issued an amended order:

> The application for stay of execution of sentence of death . . . is treated as an application for stay pending appeal in the Eighth Circuit. The application is granted pending the disposition of petitioner's appeal. We leave for further consideration in the lower courts whether an evidentiary hearing is necessary.

After the Supreme Court granted a stay pending appeal, we granted initial en banc review of Bucklew's appeal and the appeal in Zink and scheduled both cases for argument on September 9. After the oral arguments, we concluded that Bucklew's "as applied" Eighth Amendment claim warrants a separate opinion. His due process claim is not materially different than the due process claim raised in Zink and will be resolved in our opinion in that case.

---

P.R.R. v. Schendel, 270 U.S. 611, 616-17 (1926); Bell v. Sellevold, 713 F.2d 1396, 1404 (8th Cir. 1983); Restatement (Second) of Judgments § 14 cmt. a.

Appellees did not raise this issue in the district court, and the court did not address it. As the court dismissed Bucklew's complaint prior to answer, appellees were not required to raise this affirmative defense before the court ruled. See Fed. R. Civ. P. 12(b). It is by no means certain how the principle that applies claim preclusion to claims that could have been filed in the earlier action -- part of the rule against "claim splitting" -- would be applied in this unusual situation. See Restatement (Second) of Judgments §§ 24-26, 33. Therefore, we decline to affirm the district court on this alternative ground, which was neither presented to nor decided by that court. Instead, we leave it to the district court to consider on remand "the question whether and to what extent the bars of res judicata and collateral estoppel apply," as we did in Occhino v. United States, 686 F.2d 1302, 1312 (8th Cir. 1982).

## II.

In resolving an earlier appeal in <u>Zink</u>, we applied the Supreme Court's plurality opinion in <u>Baze v. Rees</u>, 553 U.S. 35, 50 (2008), and ruled that, to state an Eighth Amendment method-of-execution claim, a plaintiff must plausibly allege a substantial risk of severe pain, and "a feasible and more humane alternative method of execution, or a purposeful design by the State to inflict unnecessary pain." <u>In re Lombardi</u>, 741 F.3d 888, 895-96 (8th Cir.) (en banc), <u>reh'g denied</u>, 741 F.3d 903, <u>cert. denied</u>, 134 S. Ct. 1790 (2014). When the <u>Zink</u> plaintiffs subsequently declined to amend their complaint to allege a more humane alternative, the district court dismissed their facial Eighth Amendment challenge to Missouri's lethal injection protocol. That was the primary focus of plaintiffs' Eighth Amendment appeal in <u>Zink</u>.

In the Order being appealed, after denying Bucklew a preliminary injunction and stay of execution, the district court dismissed the complaint. The court first concluded that the expert affidavits Bucklew submitted in support of his motion for stay of execution to show a substantial likelihood of needless pain "do not contain the specificity necessary to prevail on an Eighth Amendment claim." That was a merits analysis appropriate in ruling on a motion for summary judgment, not an analysis of whether the complaint plausibly pleaded an Eighth Amendment claim under <u>Baze</u> and <u>Lombardi</u>. However, the court went on to conclude that the complaint must be dismissed because Bucklew had not alleged that a "feasible and readily available alternative" method of execution exists, and because plaintiffs in <u>Zink</u>, including Bucklew, had declined to amend their complaint to allege such an alternative. That was a properly focused Rule 12 analysis of the pleading.

On appeal, Bucklew argues, like appellants in <u>Zink</u>, that our decision in <u>Lombardi</u> misinterpreted the Supreme Court's decision in <u>Baze</u>. We will resolve that issue in our separate en banc opinion in <u>Zink</u>. But Bucklew primarily argues that our

-4-

rule in Lombardi does not apply to his separate § 1983 action, or alternatively that he meets the requirements of that rule, because he has adequately alleged that Missouri's method of execution *if applied to him* would, because of his unique medical condition, violate the Eighth Amendment standard -- a "substantial risk of serious harm," Baze, 553 U.S. at 50 (plurality opinion) -- and a readily available alternative that would significantly reduce the risk.

Between our decision in Lombardi on January 24, 2014, and the order staying Bucklew's execution pending this appeal, the Supreme Court denied last minute stays of execution to four Zink plaintiffs, most of whom argued that our decision in Lombardi misconstrued Baze and therefore warranted stays of execution. The Supreme Court did not grant Bucklew a stay of execution, but it did grant a stay pending appeal, which had the same immediate effect. The Court's decision to grant a stay pending appeal reflected its determination that Bucklew had shown "a significant possibility of success on the merits" of his appeal from the district court's dismissal of his complaint. Hill v. McDonough, 547 U.S. 573, 584 (2006). Consideration of why the Court concluded that Bucklew's challenge to Missouri's lethal injection method of execution might be so significantly different requires a close look at the record on appeal.

**III.**

We first quote portions of our prior panel opinion describing the allegations in Bucklew's complaint and the opinions of his medical experts regarding the medical condition on which his as-applied challenge is based:

> [W]e set forth verbatim portions of the allegations from Bucklew's complaint regarding his medical condition:

> 26.    Mr. Bucklew has suffered from the symptoms of congenital cavernous hemangioma his entire life, including frequent

hemorrhaging through his facial orifices, disturbances to his vision and hearing, pain and pressure in his head, constant headaches, dizziness, and episodes of loss of consciousness. He frequently bleeds through his mouth, nose and ears, and has sometimes bled even through his eyes.

27. The hemangiomas—which are clumps of weak, malformed vessels—fill Mr. Bucklew's face, head, neck and throat, displacing healthy tissue and stealing blood flow from normal adjacent tissues, depriving those tissues of necessary oxygen.

28. The hemangiomas are vascular tumors, and it is in the nature of such tumors to continuously expand. Although the tumors are classified as benign tumors, their growth is locally invasive and destructive.

29. Over the years, doctors have attempted treatment on many occasions, only to conclude that the available treatments—chemotherapy, sclerotherapy, radiation therapy and surgery—hold no appreciable chance of success.

30. In 1991, a specialist who examined Mr. Bucklew and treated his hemangioma for many years noted that any attempt to remove the vascular tumor "would require extensive surgery which would be mutilating and very risky as far as blood loss."

31. Over the years, attempts at sclerotherapy, chemotherapy and radiation therapy all failed. An April 2012 report notes the minimal success of prior therapies and states: "The large size makes the hemangioma not amenable to sclerotherapy." The report also notes that surgery would result in "large concomitant disability and disfiguration."

32. Doctors have described the hemangiomas as "very massive," "extensive" and a "large complex right facial mass." In March 2003, a doctor who examined Mr. Bucklew wanted him examined immediately by a specialist because of progression of the vascular tumor, which the doctor believed "could be potentially fatal to the patient." In June 2010, an imaging report stated that Mr. Bucklew's airway was "severely compromised." A July 2011 medical report noted there was "difficulty [with] bleeding management." Two months later, another doctor noted the alarming expansion of the lesion, stating it encompassed "the

entire soft palate and uvula, which are impossible to visualize due to the expansion of the lesion."

33. Throughout the records, doctors employed or contracted with by the State of Missouri repeatedly warn of the expansion of the vascular tumor, stating in September 2011 "this has been present for 20 plus years, but has increasingly grown larger and larger."

34. The possibility of another attempt at treatment was dismissed in April 2011, when Mr. Bucklew's doctor observed "there was minimal benefit from the previous sclerotherapy" and the "large size" of the hemangioma precluded effective treatment with sclerotherapy.

35. Medical reports in March 2013 describe an episode of severe pain, lightheadedness and loss of consciousness. Doctors ordered narcotic drugs for pain.

36. Periodically, the hemangiomas rupture, and Mr. Bucklew is given gauze and biohazard bags to keep with him to collect bloody discharge. Mr. Bucklew frequently suffers from nausea, dizziness and bouts of excruciating pain. He is treated with anti-epileptic and narcotic pain medication as well as medication to stabilize his mood.

\* \* \* \* \*

Bucklew obtained and attached to his complaint a declaration from Dr. Joel Zivot, a professor of surgery and anesthesiology at Emory University in Atlanta, Georgia. Dr. Zivot states that he reviewed Bucklew's medical records for the period of 1986 through February 17, 2014. In most pertinent part, Dr. Zivot stated as follows:

"Based on my review of Mr. Bucklew's medical records, it is my opinion that a substantial risk exists that, during the execution, Mr. Bucklew will suffer from extreme or excruciating pain as a result of hemorrhaging or abnormal circulation of the lethal drug, leading to a prolonged execution. Mr. Bucklew also has a partially obstructed airway, which raises a very substantial risk that during an execution he could suffocate. Further, because Mr. Bucklew is prescribed several medications,

including medications for pain, there is a substantial risk he will suffer an adverse event from drug interactions.

. . .

Methylene blue is a nitric oxide scavenger which will cause a spike in blood pressure when injected.

. . .

Blood pressure is not monitored during lethal injection. A spike in Mr. Bucklew's blood pressure raises a very substantial risk of hemorrhage. Mr. Bucklew's cavernous hemangiomas are a plexus of blood vessels that are abnormally weak and can easily rupture, even when the blood pressure is normal.

If Mr. Bucklew's blood pressure spikes after the methylene blue injections, the hemangiomas, now further engorged with blood, are likely to rupture, resulting in significant bleeding in the face, mouth and throat. If blood enters Mr. Bucklew's airway, it would likely cause choking and coughing, which Mr. Bucklew will experience as severe pain and suffocation.

There is also a very substantial risk that, because of Mr. Bucklew's vascular malformation, the lethal drug will not circulate as intended. The presence of cavernous hemangiomas creates an alternative low-resistance pathways to injected drugs. It is very likely that this abnormal circulation will inhibit the effectiveness of the pentobarbital, thereby delaying the depression of Mr. Bucklew's central nervous system. The reduced effectiveness of the pentobarbital and the delayed depression of the central nervous system will create a substantial risk of a prolonged and extremely painful execution for Mr. Bucklew.

. . .

It is important to understand, in the present context, that pentobarbital is not an analgesic and has no effect on reducing pain. Like other barbiturates, pentobarbital is antalgesic, that is, it tends to exaggerate or worsen pain.

. . .

-8-

Mr. Bucklew's medications may interact with the pentobarbital—an antalgesic—in a manner that increases pain, causing a substantial risk that Mr. Bucklew will experience an extremely painful death.
. . .

Moreover, the passage of time suggests that Mr. Bucklew's hemangiomas may pose significantly greater risk at this time, as it is the nature of hemangiomas to continuously expand. For this reason, a comprehensive examination of Mr. Bucklew is vital to developing a thorough understanding of the substantial risks posed to Mr. Bucklew by lethal injection[.] . . .”

Dr. Gregory Jamroz, a radiologist with additional certification in neuroradiology, similarly described Mr. Bucklew's condition and concluded:

“[I]t is my opinion to a reasonable degree of scientific certainty that reliance on a blood-borne sedative or other substance to bring about a rapid and painless death in Mr. Bucklew's case is questionable, and that in light of the pre-existing medical condition discussed in this declaration, examination of the vascular malformations is indicated if the goal of the administration of the substance is to bring about a rapid and painless death.”

\*     \*     \*     \*     \*

On May 16, Bucklew filed . . . a supplemental affidavit from Dr. Zivot . . . . [which] stated . . . that Bucklew suffered from hypertension and had a “very large vascular mass” inside his mouth and throat. Dr. Zivot stated, “The mass arises through the hard palate, extends into the upper maxilla on the right, and fully encompasses the uvula and distorts the anatomy of Mr. Bucklew's airway.” He continued, “Mr. Bucklew's airway is . . . friable, meaning it is weak and could tear or rupture. If you touch it, it bleeds. . . . During an execution, Mr. Bucklew will be at great risk of choking and suffocating because of his partially obstructed airway and complications caused by his hemangiomas.” Dr. Zivot concluded Bucklew's execution would carry “substantial risk to Mr.

Bucklew of suffering grave adverse events during the execution, including hemorrhaging, suffocating, and experiencing excruciating pain." 565 F. App'x at 565-68.

Without filing a response to Bucklew's complaint, defendants filed Suggestions in Opposition to his motions for a preliminary injunction and stay of execution. In arguing that Bucklew's showing was untimely and inadequate to warrant a stay of execution, defendants noted that Bucklew had urged that Missouri should not use methylene blue to flush the IV lines in his execution and stated: "The Department of Corrections will not use methylene blue in Bucklew's execution and will not use indigo carmine, a dye which also may raise blood pressure, or any other dye." Defendants did not explain what alternative procedure would be used to perform the dye's intended function. Defendants further stated:

> After Bucklew finally presented the Department of Corrections with his reports . . . the Department, as a courtesy, explored with Bucklew the option of paying for tests the parties could agree upon before the scheduled execution date. The Department did that in order to make the extremely high probability of a rapid and painless execution even higher than it already is, not as Bucklew indicates because the Department is less than confident Bucklew's execution, like other Missouri executions, will be rapid and painless. . . . It is not the Department's fault Bucklew . . . . waited until shortly before his scheduled execution to pursue his current course and created an alleged shortness of time that need not have occurred.

In his Reply, Bucklew complained that defendants "have changed their executions procedures *twice in forty-eight hours*":

> On Tuesday, May 13, 2014, Defendants informed Mr. Bucklew's counsel that they would not use methylene blue in Mr. Bucklew's execution because of the blood pressure risks Dr. Zivot identified and that they would instead use the substance indigo carmine with the saline

-10-

solution in the IV line instead. . . . Counsel immediately informed Defendants of the problems with their hastily chosen substitute indigo carmine. . . . On May 16, 2014 -- just five days before the scheduled execution -- Defendants revealed in their Response another hastily made change -- indicating that they will not use indigo carmine because of the risks posed to Mr. Bucklew . . . .

Despite this factual record, which went well beyond the four corners of Bucklew's complaint, the district court dismissed the complaint, *sua sponte*, because it did not contain the "plausible allegation of a feasible and more humane alternative method" that Lombardi required, and because plaintiffs' refusal to amend their complaint in Zink demonstrated that "affording Bucklew an opportunity to amend his pleading to state a known and feasible alternative would be futile." Without question, a district court has the power to dismiss a complaint *sua sponte*, but only where plaintiff cannot possibly prevail and amendment would be futile. See Smith v. Boyd, 945 F.2d 1041, 1042-43 (8th Cir. 1991). Here, we conclude the district court exercised this limited authority prematurely because it was not "patently obvious the plaintiff could not prevail." Id. at 1043.

There is case law supporting Bucklew's assertion that his as-applied challenge to Missouri's method of execution distinguishes his claim from the facial challenge in Zink. See Siebert v. Allen, 506 F.3d 1047, 1050 (11th Cir. 2007). Defendants in responding to Bucklew's motions acknowledged his serious medical condition and stated that the Department's lethal injection procedure *would be changed* on account of his condition by eliminating the use of methylene blue dye. This concession bolstered the detailed allegations in Bucklew's complaint of a substantial risk of serious and imminent harm that is sure or very likely to occur, allegations far more specific than the allegations addressing this part of the Baze standard in the second amended complaint in Zink. Defendants' concession also tended to support Bucklew's detailed allegations that the State had unreasonably refused to change its regular method of execution to a "feasible, readily implemented" alternative that

-11-

would "significantly reduce" the substantial risk of pain. <u>Baze</u>, 553 U.S. at 52. At a minimum, it should have warned the court not to assume that Bucklew would decline an invitation to amend the as-applied challenge in his complaint simply because the <u>Zink</u> plaintiffs had declined to amend the very different facial challenge in their complaint.

For these reasons, we conclude the district court erred in dismissing the complaint, *sua sponte*. In our view, the entire record before the district court resembled the facts before the Supreme Court in <u>Nelson v. Campbell</u>, 541 U.S. 637 (2004): Plaintiff alleged that the State would violate the Eighth Amendment by using a pre-execution "cut-down" procedure to reach his severely compromised peripheral veins. Defendants, while asserting that the purported § 1983 claim was barred by the successive habeas rule, acknowledged that plaintiff had proposed an alternative procedure that was a preferred method. After concluding that the case must be remanded because the claim was cognizable under § 1983, the Court noted: "An evidentiary hearing will in all likelihood be unnecessary, however, as the State now seems willing to implement petitioner's proposed alternatives." <u>Id.</u> at 646. The record in this case differs because Bucklew's attorneys have given no indication they would compromise any of their demands. Indeed, some of those demands appear to be "relief [that] would foreclose execution," which would make his § 1983 claim non-cognizable. <u>Hill</u>, 547 U.S. at 582; <u>see</u> <u>Nelson</u>, 541 U.S. at 648. But the State's concession that it would alter its procedure by not using methylene blue dye brought Bucklew's claim at least potentially within the purview of <u>Baze</u> and therefore made pre-answer *sua sponte* dismissal of the complaint inappropriate.

## IV.

On remand, the district court in addressing the merits of Bucklew's claim must proceed from the premise that "a State retains a significant interest in meting out a sentence of death in a timely fashion." <u>Nelson</u>, 541 U.S. at 644. Thus, further

-12-

proceedings should be narrowly tailored and expeditiously conducted to address only those issues that are essential to resolving Bucklew's as-applied Eighth Amendment challenge. "The District Court will have the usual authority to control the order of proof, and if there is a failure of proof on the first element that it chooses to consider, it would not be an abuse of discretion to give judgment for [defendants] without taking further evidence." Helling v. McKinney, 509 U.S. 25, 35 (1993).

The first step should be a timely response by defendants to the complaint or any amended complaint. The parties' respective positions can then be clarified before determining whether discovery and an evidentiary hearing are needed. Bucklew's arguments on appeal raise an inference that he is impermissibly seeking merely to investigate the protocol without taking a position as to what is needed to fix it. He may not be "permitted to supervise every step of the execution process." Whitaker v. Livingston, 732 F.3d 465, 468 (5th Cir.), cert. denied, 134 S. Ct. 417 (2013); see Lombardi, 741 F.3d at 895. Rather, at the earliest possible time, he must identify a feasible, readily implemented alternative procedure that will *significantly* reduce a substantial risk of severe pain and that the State refuses to adopt. "[C]apital punishment is constitutional. It necessarily follows that there must be a means of carrying it out." Lombardi, 741 F.3d at 895, quoting Baze, 553 U.S. at 47. Any assertion that all methods of execution are unconstitutional does not state a plausible claim under the Eighth Amendment or a cognizable claim under § 1983.

Now that the claim is being addressed on the merits, past delays bring to the forefront the question of the applicable statute of limitations governing method-of-execution Eighth Amendment claims, a question this court has not addressed. See Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263-64 (11th Cir. 2014); Walker v. Epps, 550 F.3d 407 (5th Cir. 2008), cert. denied, 130 S. Ct. 57 (2009); Cooey v. Strickland, 479 F.3d 412, 416-24 (6th Cir. 2007), cert. denied, 128 S. Ct. 2047 (2008). A motion Bucklew filed in camera with this court more than eight years ago may suggest that his as-applied Eighth Amendment claim could have been

asserted against any lethal injection protocol, not just the modified protocol adopted in October 2013.

Because this decision, when final, terminates Bucklew's appeal to this court, the Supreme Court's stay pending the appeal will expire of its own terms. The writ of execution has also expired, though of course a new writ may issue. Thus, we leave to the discretion of the district court whether a temporary stay *pendente lite* may be needed. See Hill, 547 U.S. at 584; Cooey v. Strickland, 604 F.3d 939, 946 (6th Cir.), cert. denied, 130 S. Ct. 3272 (2010).

The district court's Order dated May 19, 2014, is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

BYE, Circuit Judge, with whom MURPHY and KELLY, Circuit Judges, join, concurring in the result.

I agree the Court's order from May 19, 2014, must be reversed, and I agree this matter should be remanded for further proceedings. However, I cannot agree with the full analysis and commentary of the Court.

First, I disagree with the Court's interpretation of pleading requirements in Eighth Amendment cases. However, even assuming the Court is correct a death row inmate in a facial challenge must identify an alternative method of execution, a death row inmate in an as-applied challenge is not required to do so. Facial and as-applied challenges to execution protocols are different. See Siebert v. Allen, 506 F.3d 1047, 1049-50 (11th Cir. 2007) (granting stay on as-applied challenge to execution protocol while denying stay on facial challenge). In stating the pleading standard, the court relies on cases involving facial challenges to the general constitutionality of a particular execution protocol. Those cases did not involve a death penalty inmate arguing his unique medical condition would substantially enhance the likelihood and

-14-

severity of a painful death. It is my position a death row inmate alleging an Eighth Amendment as-applied challenge need not plead a readily available alternative method of execution. A state cannot be excused from taking into account a particular inmate's existing physical disability or health condition when assessing the propriety of its execution method. When, as here, a death row inmate with a health condition does not have sufficient access to information or testing, that inmate cannot be expected to plead an alternative method.

Second, the Court seems to construe the Supreme Court's denial of stays of execution to eight <u>Zink</u> plaintiffs following <u>In re Lombardi</u>, 741 F.3d 888, 897 reh'g denied, 741 F.3d 903 (8th Cir.), cert. denied <u>Zink v. Lombardi</u>, 134 S. Ct. 1790 (2014), as evidence the Supreme Court agrees with the Eighth Circuit's pleading requirements. However, there is no indication the Supreme Court considered the Eighth Circuit's pleading requirement analysis. Therefore, any such inference from the Supreme Court's recent stay denials is inappropriate.

Third, the Court asserts, without support, the proposition that no physical disability or illness could ever foreclose execution. While the Supreme Court has been clear on the general proposition that, so long as a state-imposed death penalty is constitutional, there must be some way for states to carry out executions, the Supreme Court has also been clear that some individuals cannot be executed. <u>See</u> <u>Hall v. Florida</u>, 134 S. Ct. 1986, 1992 (2014) ("[P]ersons with intellectual disability may not be executed."); <u>Roper v. Simmons</u>, 543 U.S. 551, 575 (2005) ("[T]he death penalty cannot be imposed upon juvenile offenders . . . ."); <u>Ford v. Wainwright</u>, 477 U.S. 399, 410 (1986) ("The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane."). The Supreme Court has not addressed the open question of whether there are some physical disabilities or health conditions which would prevent a state from executing an individual because any execution would be unconstitutionally cruel and unusual based on that individual's

particular disability or health condition. This question is not before the Court and the Court's opinion should not be read to answer this question.

Fourth, I do not join in the commentary of Section IV. To begin, the majority asserts, without support from the record, that Bucklew's arguments "raise an inference that he is impermissibly seeking merely to investigate the protocol without taking a position as to what is needed to fix it." It is not the role of this Court to speculate on a party's true intention in filing a lawsuit. Given that a strong possibility of cruel and unusual punishment during Bucklew's death is at stake, the more likely inference from Bucklew's pleadings is that he seeks to remedy those concerns rather than merely satisfy an intellectual curiosity about Missouri's execution protocol or merely delay his execution. And, as noted above, nothing requires Bucklew to propose a specific alternative to the execution protocol; no precedent supports the position that Bucklew is required to "tak[e] a position as to what is needed to fix [the protocol]" in an as-applied challenge.

The Court then restates that Bucklew "at the earliest possible time, [] must identify a feasibly, readily implemented alternative procedure that will *significantly* reduce a substantial risk of severe pain and that the State refuses to adopt." Bucklew is under no obligation to do so. The Court fails to cite, and I have been unable to find, any support for the proposition Bucklew is required to make any new pleadings, amendments, or motions "at the earliest possible time." It is within the district court's control to set any discovery deadlines and conduct proceedings in the normal order of business. Additionally, for the reasons discussed above, the requirement of providing an alternative execution protocol does not apply in this matter.

Finally, the Court improperly suggests Bucklew's as-applied challenge may not be timely. Such a discussion is unnecessary to the outcome of this appeal, and is improper because the district court has not yet ruled on the issue. Bucklew's prior *in camera* motion is not before the Court. Additionally, it is for the district court to

determine in the first instance whether Bucklew's claim is timely. Despite the Court's suggestion Bucklew's claim may be time-barred, I note Bucklew has put forth substantial evidence to show the claim was brought in a timely manner. This evidence includes: Missouri has changed its protocol many times since imposing a sentence of death on Bucklew; Bucklew's condition has become worse over time; and, because of Missouri's opposition, Bucklew has struggled for years to obtain sufficient scans to fully understand the extent of his health condition. It is for the district court to conclude whether Bucklew improperly delayed in filing his claim.

SHEPHERD, Circuit Judge, with whom MURPHY and BYE, Circuit Judges, join, concurring.

Although I concur in the opinion, I write separately to reiterate my view that a prisoner challenging a method of lethal injection under the Eighth Amendment need not identify an alternative method of execution in the complaint, provided that he concedes other methods of lethal injection would be constitutional. The Court notes that "at the earliest possible time, [Bucklew] must identify a feasible, readily implemented alternative procedure that will *significantly* reduce a substantial risk of severe pain and that the State refuses to adopt." Consistent with my dissent in Zink, a prisoner must only concede there would be a constitutional method of execution in his complaint and the Court's reference to the "earliest possible time" should not be misconstrued as stating a pleading requirement.

_____