# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1849

_____

Jack Harold Jones, Jr.

*Plaintiff - Appellant*

v.

Wendy Kelley, Director, Arkansas Department of Correction, in her official capacity; Rory Griffin, Deputy Director, Arkansas Department of Correction, in his official capacity; Dale Reed, Chief Deputy Director, Arkansas Department of Correction, in his official capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: April 22, 2017
Filed: April 24, 2017

_____

Before RILEY, GRUENDER, and BENTON, Circuit Judges.

_____

PER CURIAM.

Jack Harold Jones, Jr. appeals the district court's[1] order denying a preliminary injunction, and he moves for a stay of his execution scheduled for tonight, April 24, 2017. Jones argues that, because of his specific medical conditions, the administration of the Arkansas Department of Correction's ("ADC") lethal-injection protocol will inflict cruel and unusual punishment on him in violation of the Eighth Amendment. We affirm the district court's order and deny his motion for a stay.

I.

On June 6, 1995, Jones entered an accounting office where Mary Phillips worked as a bookkeeper. On this day, Mary's eleven-year-old daughter, Lacy, was with her. Jones robbed the business at gunpoint, then took Mary and Lacy into a small break room. He tied Lacy to a chair in the bathroom adjacent to the break room, then returned to Mary. While Lacy sat, bound to a chair, in an adjacent room, Jones bludgeoned, raped, and strangled Mary to death. Afterwards, Jones severely beat and strangled Lacy, leaving her for dead. Lacy later regained consciousness, identified her assailant to police, and testified at Jones's trial. Jones was convicted of capital murder, rape, and attempted capital murder, and he was sentenced to death in 1996. *Jones v. State*, 8 S.W.3d 482, 483-86 (Ark. 2000); *Jones v. State*, 947 S.W.2d 339, 340 (Ark. 1997).

Twenty-one years later, Jones still has not been executed. Instead, Jones, along with other death-row inmates, has delayed his execution through a series of lawsuits challenging different aspects of Arkansas's method-of-execution statute and the ADC's lethal-injection protocol. *See, e.g.*, *Hobbs v. McGehee*, 458 S.W.3d 707 (Ark. 2015); *Hobbs v. Jones*, 412 S.W.3d 844 (Ark. 2012); *Ark. Dep't of Corr. v. Williams*,

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

357 S.W.3d 867 (Ark. 2009). Due in part to this stream of litigation, Arkansas has not carried out an execution since 2005—until last week.

In 2015, the Arkansas legislature amended its method-of-execution statute to authorize the use of a three-drug protocol: midazolam, followed by vecuronium bromide, followed by potassium chloride. *See* Ark. Code Ann. § 5-4-617 (2015). In April 2015, Jones and other inmates challenged the legality of this protocol under the Arkansas Constitution in state court. Last year, the Arkansas Supreme Court dismissed their claims, and the United States Supreme Court denied certiorari on February 21, 2017. *Kelley v. Johnson*, 496 S.W.3d 346, 355-60 (Ark. 2016), *cert. denied*, 137 S. Ct. 1067 (2017). Six days later, on February 27, 2017, Arkansas Governor Asa Hutchinson scheduled executions for Jones and seven other inmates to occur in April 2017.

On March 27, 2017, three weeks before the first scheduled execution, Jones and the other seven inmates initiated yet another lawsuit challenging the lethal-injection protocol. This time, they brought an action in federal court under 42 U.S.C. § 1983, alleging that the protocol violates the Eighth and Fourteenth Amendments of the United States Constitution. As they did in state court, the inmates argued that the protocol will result in cruel and unusual punishment because midazolam cannot render the inmates insensate to the pain caused by the other two drugs in the protocol. On April 15, 2017, after conducting a four-day evidentiary hearing, the district court entered a preliminary injunction staying all of the executions while the case proceeded. We vacated the district court's stays of execution in *McGehee v. Hutchinson*, No. 17-1804, slip op. at 8 (8th Cir. Apr. 17, 2017) (en banc) (per curiam).

In *McGehee*, we held that the inmates were not entitled to a stay for three reasons. First, we held that the inmates' use of "dilatory tactics" was sufficient reason to deny a stay. *Id.* at 4. Second, we held that "[t]he equivocal evidence recited by the

district court falls short of demonstrating a significant possibility that the prisoners will show that the Arkansas protocol is 'sure or very likely' to cause severe pain and needless suffering." *Id.* at 6 (quoting *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015)). Third, we held that "the availability of the several [alternative] methods cited by the district court is too uncertain to satisfy the rigorous standard under the Eighth Amendment." *Id.* at 7.

Shortly thereafter, Jones filed this as-applied challenge to the protocol and requested a preliminary injunction. Jones argued that even if the protocol does not violate his fellow inmates' Eighth Amendment rights, it violates his Eighth Amendment rights because his specific medical conditions create a risk that the lethal-injection protocol will affect him differently than an average healthy inmate and will cause him severe pain. After conducting an evidentiary hearing, the district court denied Jones's motion for a preliminary injunction. Jones now appeals and moves for a stay of his execution.

## II.

"We review a district court's denial of a preliminary injunction for an abuse of discretion." *Powell v. Noble*, 798 F.3d 690, 697 (8th Cir. 2015); *see also Jones v. Hobbs*, 604 F.3d 580, 582 (8th Cir. 2010) (per curiam). "An abuse of discretion occurs where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." *Powell*, 798 F.3d at 697 (quotations omitted).

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "A court considering a stay must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have

-4-

been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). To prevail, inmates "must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Id.* To succeed on the merits of a method-of-execution claim, inmates must satisfy a two part test: they must show that "the State's lethal injection protocol creates a demonstrated risk of severe pain" and that "the risk is substantial when compared to the known and available alternatives." *Glossip*, 135 S. Ct. at 2737 (quoting *Baze v. Rees*, 553 U.S. 35, 61 (2008)). Whether a protocol creates a demonstrated risk of severe pain and whether that risk is substantial when compared to known and available alternatives are factual findings that we review for clear error. *Id.* at 2738-39.

Here, the district court held that all three of the reasons we provided in *McGehee* supported denying Jones's motion for a preliminary injunction. We agree.

A.

First, Jones's delay in bringing his as-applied claim is sufficient reason to deny a stay. As we noted in *McGehee*, "[t]he prisoners voluntarily elected to forego their federal claim in April 2015 and chose instead to challenge the method of execution exclusively in state court under the Arkansas Constitution." *McGehee*, slip op. at 4. Indeed, the inmates' federal constitutional claim "could have been litigated at the same time as the state constitutional claim beginning in April 2015." *Id.* Thus, we concluded that "the prisoners' use of 'piecemeal litigation' and dilatory tactics is sufficient reason by itself to deny a stay." *Id.* (quoting *Hill*, 547 U.S. at 584-85). The same reasoning applies to Jones's decision to delay bringing his as-applied claim.

Jones contends that, unlike the facial challenge in *McGehee*, he could not have litigated his as-applied claim at the same time as the state constitutional claim in April 2015 because the effect of his specific medical conditions on his execution could not

-5-

be assessed until the execution date was set. He suggests that his "health conditions should be analyzed as analogous to a *Ford v. Wainwright*, 477 U.S. 399 (1986), competency to be executed claim." To be sure, we have indicated that such competency-to-be-executed claims become ripe only upon the setting of the execution date. *Nooner v. Norris*, 499 F.3d 831, 834 (8th Cir. 2007). However, this rule does not necessarily extend to all claims that an inmate is unfit to be executed. In fact, we recently declined to extend this rule to encompass claims by inmates alleging that they may not be executed due to intellectual disabilities. *Davis v. Kelley*, No. 04-2192, slip op. at 7 (8th Cir. Apr. 17, 2017) (per curiam).

Nevertheless, even assuming that Jones's claim did not become ripe until the execution date was set in February 2017, we conclude that he was not diligent in bringing his as-applied claim. Jones's expert, Dr. Joel Zivot, evaluated his medical conditions on March 23, 2017, four days before the complaint in *McGehee* was filed on March 27. As the district court noted, Jones provides no good reason why his as-applied claim could not have been included in *McGehee* or been filed at the same time as *McGehee*.[2] Thus, he could have brought this claim significantly earlier than April 17, 2017—only one week before his scheduled execution. Instead, Jones split his claims and waited until the last minute before he filed his as-applied claim. This justifies denying his request for a stay. *See Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam) ("A court may consider the last-minute

---

[2]On appeal, Jones suggests that the district court clearly erred in failing to account for the time pressure that the execution schedule placed on his counsel. However, Jones did not present this time-pressure argument to the district court, and it is waived on appeal. *See United States v. Rees*, 447 F.3d 1128, 1130 (8th Cir. 2006). Moreover, as Jones admits, the district court was aware of counsel's burden, having made factual findings regarding it in *McGehee*. Thus, even though Jones did not make this argument to the district court, we find no reason to believe that the district court failed to account for the time pressure placed on counsel before finding that Jones could have brought his claim earlier.

-6-

nature of an application to stay execution in deciding whether to grant equitable relief."). Although Jones cites *Bucklew v. Lombardi* for the proposition that claim-splitting is permitted when bringing a separate as-applied challenge to a method of execution, there we merely noted that it was not certain that claim preclusion would bar an as-applied challenge brought after a facial challenge—we never indicated that it would be improper to deny a stay even if an inmate delayed bringing the as-applied challenge. 783 F.3d 1120, 1122 n.1 (8th Cir. 2015) (en banc). Therefore, we refuse to allow Jones once again to delay the administration of justice through piecemeal litigation and dilatory tactics.

## B.

Second, the district court found that Jones failed to establish a significant possibility that he could show that, as applied to him, "the State's lethal injection protocol creates a demonstrated risk of severe pain." *See Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 61). This was not clear error. In *McGehee*, we held that the inmates failed to satisfy their burden in this regard. No. 17-1804, slip op. at 4-6. Further, we note that the ADC executed one inmate, Ledell Lee, under this protocol several days ago. According to witnesses, including ADC Director Wendy Kelley, at no time did Lee show any signs of physical distress, such as gasping, groaning, or struggling against the restraints. *Cf. In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2017 WL 378690, at *27 (S.D. Ohio Jan. 26, 2017) (citing testimony by inmates' expert witness that, if an inmate's "brain was still active enough to [speak, writhe, clench his fists, and try to lift himself off the table] after administration of the drugs, then the drugs were not having the intended effect"). The evidence that Jones provides regarding his specific medical conditions falls short of distinguishing himself from Lee or from any other inmates, and it fails to demonstrate that the protocol will create a demonstrated risk of severe pain if applied to him.

Jones provided evidence in the form of testimony by Dr. Zivot. Dr. Zivot testified that Jones suffers or likely suffers from diabetes, hypertension, peripheral neuropathy, chronic pain, and sleep apnea. He expressed concern over Jones's use of methadone and gabapentin, which are two medications prescribed to treat his medical conditions. Dr. Zivot explained that patients who take methadone and gabapentin will experience a decreased sensitivity to drugs like midazolam. As a result, he opined that there is a "real possibility" that the midazolam will be ineffective in rendering Jones insensate. R. Doc. 23, at 70-71. Dr. Zivot further opined that, because of Jones's neuropathy, the consciousness check meant to ensure that the midazolam worked as intended "may fail to be certain." R. Doc. 23, at 71. Thus, he testified that, if the midazolam does not work as intended, the consciousness check does not reveal this, and the execution proceeds, then Jones's death would be "as a consequence of suffocation where he is aware that he is suffocating," which he opined would be "extremely painful and terrifying." R. Doc. 23, at 71. In response, the State provided declarations of two experts asserting that Jones's medical conditions would not inhibit or alter the desired effects of the midazolam.

We conclude that Dr. Zivot's testimony that there is a "real possibility" that the midazolam will be ineffective and that the consciousness check "may fail to be certain" ultimately "falls short of demonstrating a significant possibility that [Jones] will show that the Arkansas protocol is 'sure or very likely' to cause severe pain and needless suffering"—especially in light of the declarations provided by the State's experts. *See McGehee*, No. 17-1804, slip op. at 6. Thus, the district court did not clearly err in finding that Jones failed to meet his burden in this regard. *See In Re Ohio Execution Protocol*, No. 17-3076, 2017 WL 1279282, at *7 (6th Cir. Apr. 6, 2017) (explaining that the Supreme Court in *Glossip* determined only that the district court "did not clearly err by finding that a particular group of petitioners failed to meet their burden at the preliminary-injunction stage to show that they were likely to succeed on their claim that use of midazolam was unconstitutional").

## C.

Third, the district court found that Jones failed to establish that there was a significant possibility that he could identify an alternative method of execution that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *See Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52). This was not clear error. In *McGehee*, we clarified that "the State must have access to the alternative and be able to carry out the alternative method relatively easily and reasonably quickly." No. 17-1804, slip op. at 6. Applying this standard, we held that the inmates failed to meet their burden with respect to the two alternatives that Jones now identifies: a single dose of pentobarbital and the firing squad.[3] *Id.* at 7. We need not revisit these alternatives, as they were fully litigated in *McGehee*, and we concluded that they are not known and available alternatives. *See id.*; *Turner v. U.S. Dep't of Justice*, 815 F.3d 1108, 1111 (8th Cir. 2016). And, contrary to Jones's assertion, any subsequent statements that the ADC has made regarding whether it is legally authorized to disregard drug manufacturers' restrictions on using drugs for lethal injections do not show that pentobarbital is available to the ADC. The evidence in *McGehee* showed that the ADC has been unable to obtain pentobarbital, regardless of whether the ADC may disregard manufacturers' restrictions on what it may do with drugs that it successfully obtains. No. 17-1804, slip op. at 7.

In an attempt to overcome this deficiency, Jones cites a concurring opinion in *Bucklew* to support the proposition that, because he raises an as-applied challenge, the requirement to identify an alternative method of execution simply does not apply to him. *See* 783 F.3d at 1129 (Bye, J., concurring) ("It is my position a death row inmate alleging an Eighth Amendment as-applied challenge need not plead a readily

---

[3]For the first time on appeal, Jones also points to sevoflurane gas as an alternative method of execution. Because he did not make this argument before the district court, it is waived. *See Rees*, 447 F.3d at 1130. In any case, we also rejected sevoflurane gas as an alternative method in *McGehee*. No. 17-1804, at \*7.

available alternative method of execution."). However, as the majority opinion in *Bucklew* made clear, an inmate raising an as-applied challenge still must identify a "feasible, readily implemented alternative that would significantly reduce the substantial risk of pain." *See id.* at 1127 (quotations omitted). Therefore, the district court did not clearly err in finding that Jones failed to meet his burden in this regard, and it did not abuse its discretion in denying his motion for a preliminary injunction.

III.

Accordingly, we affirm the district court's order and deny a stay of execution.

_____