# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1848
_____

Marcel Wayne Williams

*Petitioner - Appellant*

v.

Wendy Kelley, Director, Arkansas Department of Correction, et al.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: April 24, 2017
Filed: April 24, 2017
[Published]

_____

Before WOLLMAN, LOKEN, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

On April 11, 2017, Arkansas inmate Marcel Williams, who is scheduled to be executed on April 24, brought this 42 U.S.C. § 1983 action challenging the Arkansas

lethal injection execution protocol. The district court[1] denied his motion for a preliminary injunction. Williams appeals and moves for a stay of execution pending appeal. We deny the motion for stay.

In April 2015, Williams joined other Arkansas prisoners in filing an action raising a federal constitutional challenge to the recently adopted method of execution, the method Williams challenges in this case. When the State removed, plaintiffs dismissed without prejudice and refiled in state court, alleging only violations of Arkansas law. After a year of litigation, the Supreme Court of Arkansas dismissed the claim that the method of execution constituted cruel or unusual punishment in violation of the Arkansas Constitution. Kelley v. Johnson, 496 S.W. 3d 346, 357 (Ark. 2016), cert. denied, 137 S. Ct. 1067 (2017). On February 27, 2017, six days after the denial of certiorari, Arkansas Governor Asa Hutchinson scheduled the executions of Williams and seven other death row prisoners.

On March 27, Williams and eight other inmates sentenced to death filed an action alleging that the method of execution violates the Eighth Amendment in all cases. The district court granted stays of execution, but we vacated the stays, concluding (i) the prisoners unreasonably delayed in bringing their federal claims, (ii) they failed to show a likelihood of success on the merits of their claim that the execution protocol was "*sure or very likely* to cause serious illness and needless suffering," Glossip v. Gross, 135 S. Ct. 2726, 2737 (2015), quoting Baze v. Rees, 553 U.S. 35, 50 (2008) (plurality opinion); and (iii) the prisoners failed to make the second showing Glossip requires -- a significant possibility of establishing a known, available alternative that would significantly reduce a substantial risk of severe pain.

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

McGehee v. Hutchinson, No. 17-1804 (8th Cir. Apr. 17), cert. denied, No. 16A1003 (16-8770) (April 20, 2017).[2]

Williams filed this separate action, an "as-applied" challenge alleging that, due to his medical conditions -- morbid obesity, diabetes and attendant neuropathy, hypertension, and sleep apnea -- there is a substantial and unjustifiable risk that the execution method will cause him severe pain and serious harm in violation of the Eighth Amendment.

On April 21, 2017, the district court held an evidentiary hearing on Williams's motion for a preliminary injunction. In addition to the record from the hearing in McGehee, Williams called as witnesses Dr. Joel Zivot, an anesthesiologist who also testified at the McGehee hearing, and Arkansas Department of Corrections Director Wendy Kelley. Based on his review of Williams's medical records and a March 23 physical examination, Dr. Zivot opined that the protocol is "unlikely" to kill Mr. Williams but more likely to leave him disabled, and that if the lethal-injection protocol causes death, "Williams will experience his death as choking and suffocating." In addition, Dr. Zivot opined that Williams's weight -- approximately 400 pounds -- will make locating a vein for IV access difficult and increase the risk that midazolam, the initial drug, will not properly provide an anesthetic effect; that his obstructive sleep apnea puts him at risk of respiratory distress during the procedure; and that, given his low potassium levels, "it is possible" that the administration of potassium chloride will not actually kill him. Director Kelley

_____

[2]As we explained in McGehee: "The State's current lethal injection protocol calls for injection of 500 milligrams of midazolam, followed by 100 milligrams of vercuronium bromide, followed by 240 milliequivalents of potassium chloride. If the prisoner remains conscious after the injection of the midazolam, however, the executioner will inject another 500 milligrams of midazolam before injecting vercuronium bromide." McGehee, No. 17-1804, Slip. Op. at 2.

-3-

testified that a pre-execution "vein check" revealed that only one of Williams's arms had a "good vein."

At the hearing, defendants introduced evidence that a medically-trained person aided by an ultrasound device can insert an IV line into a 400-pound man, and a 500 mg dose of midazolam "would render an approximately 400-pound man unconscious and unable to sense any pain or the need to breathe," regardless of whether he is diabetic, suffers from sleep apnea, or has hypertension.

The district court denied Williams's motion for a preliminary injunction on April 21. The court concluded that Williams unreasonably delayed in bringing his as-applied challenge, and split his claims by not raising this claim in the facial challenge in <u>McGehee</u>. On the merits, the court found that Williams had not identified an alternative method of execution in addition to those suggested in <u>McGehee</u>, did not establish what additional safeguards would significantly reduce a substantial risk of severe pain given Williams's medical conditions, and failed to offer sufficient evidence to establish that the execution protocol as applied to him "is sure or very likely to cause severe pain." The court further concluded that Williams's use of piecemeal litigation and dilatory tactics was sufficient reason to deny a stay of execution. See <u>Hill v. McDonough</u>, 547 U.S. 573, 584-85 (2004).

We agree with the district court that Williams failed to offer evidence establishing a significant likelihood of success on the merits. "Inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." <u>Johnson v. Lombardi</u>, 809 F.3d 388, 390 (8th Cir.), <u>cert. denied</u>, 136 S. Ct. 601 (2015).

To succeed on the merits, Williams must show that the execution method is "<u>sure or very likely</u> to cause serious illness and needless suffering." <u>Glossip</u>, 135

-4-

S. Ct. at 2737. Dr. Zivot opined that the execution protocol is more likely to maim than kill Williams. The State produced testimony that the execution protocol will succeed despite Williams's health conditions. As in McGehee, the evidence is "equivocal," lacks "scientific consensus" and presents "a paucity of reliable scientific evidence" on the impact of the lethal-injection protocol on a person with Williams's health conditions. No. 17-1804, Slip. Op. at 5-6.

To succeed on the merits of his claim, Williams must also identify a known and available alternative method of execution that would substantially reduce a significant risk of pain. See Johnson, 809 F.3d at 391. In terms of alternative protocols, Williams argues the same alternatives offered by the inmates in McGehee, which we concluded did not meet Glossip's standard and were not likely to emerge as more than a "slightly or marginally safer alternative." McGehee, Slip Op. at 7, quoting 135 S. Ct. at 2737. Williams argues he is not required to identify a known, available alternative method in an as-applied challenge, but we rejected that contention in Johnson, 809 F.3d at 391. In Bucklew v. Lombardi, 783 F.3d 1120, 1127 (8th Cir. 2015), we recognized that, in an as-applied challenge, evidence that the State unreasonably refused to change its regular method of execution to a feasible, readily implemented alternative that would significantly reduce the substantial risk of pain caused by a prisoner's unique medical condition could satisfy the Glossip standard in an unusual case. Williams argues Director Kelley's testimony regarding his "vein check" establishes this is such a case. However, rather than establish a known, available alternative, this evidence shows that the State implements its current method in a manner designed to reduce the risk of severe pain. (Director Kelley testified that all inmates are physically examined to locate infusion sites prior to execution.)

Finally, we agree with the district court that Williams unreasonably delayed in bringing this as-applied challenge. Not only did he engage in piecemeal litigation by not joining this claim when he joined the McGehee suit, but he also failed to bring this claim when he and other prisoners brought state and federal challenges to the

method of execution after its adoption in 2015. He does not allege that his various health issues arose recently (other than a sleep apnea diagnosis in March 2017). If he had timely asserted an as-applied claim, there would have been time to litigate whether his conditions required or suggested modification of the protocol as applied to him. While Williams is correct that his medical conditions may evolve and worsen over time, so that a recent medical examination was needed after his execution was scheduled, timely pursuit of an as-applied challenge would have established an evidentiary base, likely making a last-minute stay of execution unnecessary. This "use of 'piecemeal litigation' and dilatory tactics is sufficient reason by itself to deny a stay." McGehee, No. 17-1804, Slip. Op. at 4, quoting Hill, 547 U.S. at 583.

For the foregoing reasons, we deny Williams's motion for a stay of execution pending appeal.

———————————————————