[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 15-14335
Non-Argument Calendar

————————————————

D.C. Docket No. 1:15-cv-00689-TWT

KELLY RENEE GISSENDANER,

Plaintiff-Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN, GEORGIA DIAGNOSTIC PRISON,
OTHER UNKNOWN EMPLOYEES AND AGENTS,
Georgia Department of Corrections,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(September 29, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

Kelly Gissendaner filed in the United States District Court a 42 U.S.C. § 1983 complaint seeking to prevent the State of Georgia from executing her for the murder of Douglas Gissendaner in 1997.  She claims that the execution, which is scheduled for later today, will violate the Cruel and Unusual Punishment Clause of the Eighth Amendment for a number of reasons.  Earlier this year, we affirmed the dismissal of a similar complaint by her.  Gissendaner v. Comm'r, 779 F.3d 1275, 1284 (11th Cir. 2015).

Gissendaner's most recent complaint, filed on March 9, 2015, does contain some variations to her continuing attack on Georgia's lethal injection protocol.  Those variations and her claim were addressed by the district court in an order and opinion filed on August 10, 2015.  We agree with the reasoning of that order and opinion and attach a copy of it as part of this opinion.  See Appendix A.  We also agree with the district court's denial of Gissendaner's motion for reconsideration and motion for a temporary restraining order and a stay of execution.

We add a few comments of our own to what the district court wrote.  First, Gissendaner's attorneys ignored the requirements of Federal Rule of Civil Procedure 8.  Instead of filing a complaint that contains "a short and plain statement of the claim showing that the pleader is entitled to relief," as Rule 8(b)(2) requires, they filed a document styled "Complaint and Memorandum of Law."  The rules do not permit combining a memorandum of law with a complaint.

2

The result of their ignoring Rule 8 is a document that is anything but a short and plain statement of a claim. It quotes Camus, numerous newspaper and magazine articles as well as internet postings, and resorts to hyperbolic language (e.g., "There is a name for such a proceeding: a star chamber."). The district court would have been well within its discretion to strike the document.

Second, Gissendaner's position that her Eighth Amendment rights have been or will be violated cannot be squared with Glossip v. Gross, 135 S. Ct. 2726 (2015). As the district court explained:

> The Supreme Court has specifically "outlined what a prisoner must establish to succeed on an Eighth Amendment method-of-execution claim." A plaintiff "cannot successfully challenge a method of execution unless [she] establish[es] that the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." Thus, "[t]o prevail on such a claim, there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." In addition, the plaintiff "must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."

Appendix A at 18-19 (citations to Glossip omitted).

The Supreme Court has held that "some risk of pain is inherent in any method of execution," and that the Constitution does not require the avoidance of all risk of pain." Glossip, 135 S. Ct. at 2733. What the Constitution requires is avoidance of "a substantial risk of serious harm, an objectively intolerable risk of

3

harm." Id. at 2737 (quotation marks omitted). An "objectively intolerable" risk, in this context, means that "prisoners must identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." Id. (quotation marks omitted). The allegations Gissendaner has pleaded concerning the events of March 2, 2015, which is the basis of her complaint, do not evidence, much less establish, that she faces "a substantial risk of serious harm." To the contrary, the allegations that those charged with carrying out her previously scheduled execution stopped it out of a concern that there might be a problem with the lethal injection drug, evidences exactly the opposite. The allegations show that the defendants were cautious and took steps to avoid a substantial risk of serious harm.

To put it in Iqbal and Twombly terms, Gissendaner has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Although it is not a "probability requirement," Iqbal and Twombly's plausibility standard nonetheless "asks for more than a sheer possibility" that the plaintiff's allegations are true. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[A] plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949).

4

Third, the document Gissendaner filed as a complaint does not allege the other element of an Eighth Amendment execution protocol claim, which is "an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." Glossip, 135 S. Ct. at 2733 (quotation marks omitted). The document does not even mention an alternative method or protocol or acknowledge the requirement that there be one.

We respectfully disagree with our dissenting colleague's view that the readily available alternative requirement of Baze v. Rees, 553 U.S. 35, 128 S. Ct. 1520 (2008) and Glossip does not apply to Gissendaner's claim on the ground that this is an as-applied challenge instead of a facial challenge. To begin with, there is no real difference between the nature of the challenges in Baze and Glossip and the challenge here. The plaintiffs in Baze, for example, did not contend that lethal injection in general or the three-drug protocol used by Kentucky in particular was facially unconstitutional. As the Supreme Court explained in that case:

> Petitioners do not claim that lethal injection or the proper administration of the particular protocol adopted by Kentucky by themselves constitute the cruel or wanton infliction of pain. Quite the contrary, they concede that "if performed properly," an execution carried out under Kentucky's procedures would be "humane and constitutional." Brief for Petitioners 31. That is because, as counsel for petitioners admitted at oral argument, proper administration of the first drug, sodium thiopental, eliminates any meaningful risk that a prisoner would experience pain from the subsequent injections of pancuronium and potassium chloride. See Tr. of Oral Arg. 5; App.

5

493–494 (testimony of petitioners' expert that, if sodium thiopental is "properly administered" under the protocol, "[i]n virtually every case, then that would be a humane death").

Instead, petitioners claim that there is a significant risk that the procedures will *not* be properly followed—in particular, that the sodium thiopental will not be properly administered to achieve its intended effect—resulting in severe pain when the other chemicals are administered.

Baze v. Rees, 553 U.S. at 49, 128 S. Ct. at 1530 (emphasis added).

Similarly, in the present case, Gissendaner does not claim that when the proper procedures for obtaining, storing, and using pentobarbital are followed, it will be ineffective and cause cruel or wanton infliction of pain. Instead, she challenges the way that Georgia obtains, stores, and uses pentobarbital, which is similar to the challenges that Baze mounted against Kentucky's protocol. In that case the allegations were that there was a risk of improper administration of the drug because of the difficulty of compounding the solution, the possibility of an improper placement of catheters, and the possibility of an improper rate of injection. Baze, 553 U.S. at 54, 128 S. Ct. 1533. If the challenge in this case to Georgia's protocol is an as applied one, so was the one in Baze, and it was in Baze that the Supreme Court announced the readily available alternative requirement. What Gissendaner is ultimately seeking is to force Georgia to change its procedures for obtaining, storing, and using pentobarbital which will, as a practical matter, force it to change its lethal injection protocols, and that is the same type of

relief that the plaintiffs sought in Baze and Glossip. Not only that, but there is no logical reason why there should be a readily available alternative requirement in facial challenges to lethal injection protocols but not to as-applied challenges to them.[1]

Finally, it is noteworthy that the lethal injection drug that Georgia uses in its single-drug protocol is pentobarbital, which, the Supreme Court has recognized, opponents to capital punishment have made largely unavailable through open channels. Glossip, 135 S.Ct. at 2733. To require, as Gissendaner is seeking, that Georgia open up about its source of pentobarbital would result in the drug becoming completely unavailable for use in executions, even though its use does not violate the Eighth Amendment. See id.

The judgment dismissing the complaint and all attendant orders, including the denial of the motion for a restraining order and stay of execution, are

**AFFIRMED.**

---

[1] The decision in Siebert v. Allen, 506 F.3d 1047 (11th Cir. 2007), does not serve as an authoritative interpretation of the requirements announced in Baze and Glossip because it preceded both of those decisions. In addition, the facts of Siebert involved not a challenge to how the protocol was applied generally but a claim that the plaintiff's unique medical condition would enhance the likelihood and severity of a painful death. The case of Bucklew v. Lombardi, 783 F.3d 1120 (8th Cir. 2014), while post-Baze, although pre-Glossip, also involved a plaintiff with a unique medical condition that could result in severe pain even if the protocol was properly applied. It might be said that in Siebert and Bucklew the challenge was to the protocols or drugs as applied to one death row plaintiff, not as applied to all death row inmates in the state, which is what we have here and what the Supreme Court had in Baze and Glossip.

**APPENDIX A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KELLY RENEE GISSENDANER,

    Plaintiff,

     v.

HOMER BRYSON
Commissioner, Georgia Department of
Corrections, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:15-CV-689-TWT

**OPINION AND ORDER**

The Plaintiff Kelly Renee Gissendaner was scheduled to be executed on March 2, 2015. However, prior to the scheduled execution, a doctor inspected the lethal injection drugs that were to be used and concluded that there may be safety concerns. Consequently, the State of Georgia did not proceed with the Plaintiff's execution. The Plaintiff contends that this incident has given rise to several Eighth Amendment claims. It is before the Court on the Defendants' Motion to Dismiss [Doc. 9]. For the reasons set forth below, the Motion to Dismiss [Doc. 9] is GRANTED.

## I. Background

The facts of this case have already been explained in detail on multiple occasions.[1] Thus, the Court will provide only the facts that are material to this Order. In 1998, the Plaintiff Kelly Renee Gissendaner was convicted of murder and sentenced to death.[2] On February 9, 2015, the Superior Court of Gwinnett County issued an order directing the Georgia Department of Corrections to execute Gissendaner.[3] Ultimately, the Plaintiff's execution was scheduled for March 2, 2015.[4]

This sparked an initial wave of litigation. In one of these cases, the Plaintiff argued that Georgia's lethal injection protocol – the details of which are kept confidential from the public – violated the Eighth Amendment of the United States Constitution. Due to applicable and binding Eleventh Circuit authority, the Court dismissed the Plaintiff's claim and denied her request for a stay of execution, and the Eleventh Circuit subsequently affirmed.[5]

---

[1]    See, e.g., Gissendaner v. Seaboldt, 735 F.3d 1311 (11th Cir. 2013); Gissendaner v. State, 272 Ga. 704 (2000).

[2]    Compl., at 5.

[3]    Compl., at 6.

[4]    Id.

[5]    See Gissendaner v. Commissioner, Georgia Department of Corrections, 779 F.3d 1275, 1279 (11th Cir. 2015).

On March 2, 2015, the Plaintiff was transported to the Georgia Diagnostic and Classification Prison in Jackson, Georgia for her execution.[6] However, during an inspection of the lethal injection drugs that were to be used on the Plaintiff, the State of Georgia's "doctor and . . . pharmacist were concerned about the cloudiness of the drugs and believed that they were not appropriate for medical use."[7] After roughly thirteen hours of deliberation, the Defendants – Homer Bryson (the Commissioner for the Georgia Department of Corrections) and Bruce Chatman (Warden for the Georgia Diagnostic and Classification Prison) – chose not to move forward with the execution.[8] On March 3, the Defendants' "counsel . . . informed [the Plaintiff's counsel] that [the Defendants] had decided that her execution would not proceed before her warrant window closed."[9] The Defendants are now conducting an investigation into the March 2 incident.[10] However, the details regarding this investigation, along with any results, will not be disclosed.[11]

_____

[6]      Compl., at 7.

[7]      Compl., at 9.

[8]      Compl., at 2.

[9]      Compl., at 10.

[10]     Compl., at 2.

[11]     Compl., at 2, 13.

10

The Plaintiff brought suit, asserting Eighth Amendment claims based upon the March 2 incident. The Plaintiff appears to advance two legal theories. First, she argues that the Defendants violated the Eighth Amendment when they left her in a state of "uncertainty" for nearly thirteen hours while they decided how to move forward after being apprised of the "cloudy" drugs.[12] Second, the Plaintiff renews an argument that she made in a previous lawsuit: that Georgia's lethal injection protocol is unconstitutional. Even though the Defendants inspected the drugs and ultimately chose not to have them injected into the Plaintiff, the Plaintiff argues that the March 2 incident shows that the State of Georgia's "current lethal injection practices are inadequate to prevent violations of Eighth Amendment rights."[13] The Defendants now move to dismiss.

## II. Legal Standard

A plaintiff may survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief.[14] For a

---

[12]    Compl., at 3 (The Plaintiff claims that she "endured hours of unconstitutional torment and uncertainty – to which she had not been sentenced – while Defendants dithered about whether they could execute her.").

[13]    Compl., at 2-3.

[14]    See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

11

claim to be plausible, the supporting factual matter must establish more than a mere possibility that the plaintiff is entitled to relief.[15] In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.[16]

### III. Discussion

#### A. March 2, 2015 Incident

The Plaintiff claims that the incident that occurred on her scheduled execution date, March 2, 2015, caused her "immense fear and anxiety."[17] In particular, the Plaintiff claims that she was placed under a cloud of uncertainty while state officials determined how to proceed after being notified that the drugs were "cloudy." She claims that for hours she was unsure of whether she would be executed on that date and which drugs they would use. Thus, according to the Plaintiff, the incident constituted "cruel and unusual punishment" under the Eighth Amendment. The Eighth Amendment "which applies to the States through the Due Process Clause of the

---

[15]    See Iqbal, 556 U.S. at 678.

[16]    See id.; Twombly, 550 U.S. at 555 (A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

[17]    Pl.'s Resp. Br., at 37.

Fourteenth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."[18] For those already incarcerated, "only the *unnecessary* and *wanton* infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."[19] This has an objective and subjective component. A "prison official violates the Eighth Amendment only when . . . the deprivation alleged . . . [is] objectively, 'sufficiently serious.'"[20] And "Eighth Amendment claims based on official conduct that does not purport to be the penalty formally imposed for a crime require inquiry into state of mind . . . the offending conduct must be *wanton*."[21] This is because the "Eighth Amendment . . . bans only cruel and unusual *punishment*" and so "[i]f the pain inflicted is not formally meted out as punishment . . . some mental element must be attributed to the inflicting officer before it can qualify."[22] And to be clear, the Eighth Amendment "proscribes more than physically barbarous

---

[18]    Wilson v. Seiter, 501 U.S. 294, 296-97 (1991).

[19]    Ingraham v. Wright, 430 U.S. 651, 670 (1977) (internal quotation marks omitted) (emphasis added).

[20]    Farmer v. Brennan, 511 U.S. 825, 834 (1994).

[21]    Wilson, 501 U.S. at 302 (emphasis in original).

[22]    Id. at 300.

13

punishments."[23] However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny."[24]

Based on the allegations in the Complaint, the March 2 incident did not constitute "cruel and unusual punishment." The Plaintiff does not allege that the state officials were intending to inflict pain upon her. The Plaintiff appears to acknowledge that the incident was inadvertent; caused by unforeseen events. And the Supreme Court has already found that "[a]n accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."[25] Indeed, in State of Louisiana ex rel. Francis v. Resweber,[26] the Supreme Court was faced with similar facts. There, the plaintiff "was . . . convicted of murder and . . . sentenced to be electrocuted."[27] He was "prepared for execution and on May 3, 1946 . . . was placed in the official electric chair."[28] However, presumably because of

---

[23]    Estelle v. Gamble, 429 U.S. 97, 102 (1976).

[24]    Whitley v. Albers, 475 U.S. 312, 319 (1986).

[25]    Estelle, 429 U.S. at 105; see also Baze v. Rees, 553 U.S. 35, 50 (2008) ("[A]n accident, with no suggestion of malevolence . . . d[oes] not give rise to an Eighth Amendment violation.").

[26]    329 U.S. 459 (1947).

[27]    Id. at 460.

[28]    Id.

14

a mechanical problem, when the "executioner threw the switch . . . death did not result."[29] The plaintiff was then "removed from the chair and returned to prison" and "[a] new death warrant was issued . . . fixing the execution for May 9, 1946."[30] The plaintiff asserted an Eighth Amendment claim, which the Supreme Court rejected.[31] As part of its analysis, the Supreme Court stated that "[t]he situation of the unfortunate victim of this accident is just as though he had suffered the identical amount of mental anguish and physical pain in any other occurrence, such as, for example, a fire in the cell block."[32] And when recounting Resweber in a subsequent case, the Supreme Court reiterated that "[b]ecause the first attempt had been thwarted by an 'unforeseeable accident,' the officials lacked the culpable state of mind necessary for the punishment to be regarded as 'cruel,' regardless of the actual suffering inflicted."[33] The

In response, the Plaintiff first argues that the March 2 incident is "attributable to negligence, and not an accident."[34] But to "show an Eighth Amendment violation

---

[29]    Id.

[30]    Id. at 460-61.

[31]    See id. at 464.

[32]    Id.

[33]    Wilson, 501 U.S. at 297.

[34]    Pl.'s Resp. Br., at 41.

15

a prisoner must typically show that a defendant acted, *not just negligently*, but with 'deliberate indifference.'"[35] Thus, the Plaintiff's admission – that she has alleged only that the Defendants were *negligent* – undermines her claim.

The Plaintiff then cites to the case of In re Medley[36] for the proposition that uncertainty regarding one's execution may amount to "cruel and unusual punishment" in violation of the Eighth Amendment.[37] This is patently false. The issue in In re Medley had nothing to do with the Eighth Amendment. In that case, the petitioner was convicted for a murder that "took place on the 13th day of May of [1889]."[38] However, he was then sentenced "under [a] statute of Colorado . . . which went into effect *July* 19, 1889," even though "the crime on account of which the sentence was passed was . . . committed on the 13th day of May of the same year."[39] Thus, "the *only* question . . . before [the Court] was whether the act . . . which . . . became operative on the 19th day of July . . . and under which the sentence complained of was imposed . . . [was] an *ex post facto* law, so as to be void under the . . . constitution of the United

---

[35]    Minneci v. Pollard, 132 S. Ct. 617, 625 (2012) (emphasis added).

[36]    134 U.S. 160 (1890).

[37]    Pl.'s Resp. Br., at 37-39.

[38]    Id. at 161.

[39]    Id. at 162 (emphasis added).

States."[40] The Supreme Court stated "that any law which [is] passed after the commission of [an] offense for which the party is being tried is an *ex post facto* law when it inflicts a greater punishment than the law annexed to the crime at the time it was committed."[41] The new statute that the petitioner was sentenced under included a provision not found in its predecessor. In particular, the new statute stated that "the warden is charged with the power of fixing the precise day and hour when the prisoner shall be executed; that he is forbidden to communicate that time to the prisoner . . . in fact, the prisoner is to be kept in utter ignorance of the day and hour when his mortal life shall be terminated by hanging, until the moment arrives when this act is to be done."[42] The petitioner simply objected "to this provision as being a departure from the law as it stood before, and as being an additional punishment to the prisoner, and therefore *ex post facto*."[43] The Supreme Court agreed, and found that the "secrecy must be accompanied by an immense mental anxiety amounting to a great increase of the offender's punishment."[44] However, although the Supreme Court found that this

---

[40]    Id. at 162-63 (emphasis added).

[41]    Id. at 171.

[42]    Id. at 172.

[43]    Id.

[44]    Id.

uncertainty constituted an additional "punishment," it did not find that this punishment was "cruel and unusual" under the Eighth Amendment. In fact, to the contrary, it acknowledged that "under all former systems of administering capital punishment the officer appointed to execute it had a right to select the time of the day when it should be done."[45] But even putting that to one side, In re Medley is distinguishable for another reason: the uncertainty that the petitioner was placed under was *deliberate*, and was intended to be a punishment. Indeed, that very uncertainty was mandated by the statute itself. Thus, the subjective component of the Eighth Amendment test could have more easily been satisfied. By contrast, the Defendants here did not intentionally subject the Plaintiff to uncertainty for the sake of inflicting more pain upon her. Accordingly, the Plaintiff's Eighth Amendment claim based upon the mental anguish she suffered as a result of the March 2 incident should be dismissed.

### B. Method of Execution

The Plaintiff argues that the State's execution procedure violates the Eighth Amendment. Thus, the Plaintiff seeks injunctive relief. The Supreme Court has specifically "outlined what a prisoner must establish to succeed on an Eighth Amendment method-of-execution claim."[46] A plaintiff "cannot successfully challenge

---

[45]    Id.

[46]    Glossip v. Gross, 135 S. Ct. 2726, 2737 (2015).

a method of execution unless [she] establish[es] that the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers."[47] Thus, "[t]o prevail on such a claim, there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment."[48] In addition, the plaintiff "must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."[49]

Here, the Plaintiff made a similar argument in a previous lawsuit where she sought to enjoin her execution. As noted earlier, the Court rejected this argument, and the Eleventh Circuit affirmed in a binding opinion.[50] The difference in this lawsuit, however, is that the Plaintiff is arguing that the March 2 incident establishes that the

---

[47]    Id. (internal quotation marks and citations omitted).

[48]    Id. (internal quotation marks and citations omitted).

[49]    Id. (internal quotation marks omitted).

[50]    See Gissendaner v. Commissioner, Georgia Department of Corrections, 779 F.3d 1275, 1283 (11th Cir. 2015) ("None of Gissendaner's factual allegations or evidence present facts that establish a high level of likelihood that she will suffer serious illness or needless suffering during her execution.").

19

procedure the State will use on her execution date[51] will be cruel and unusual.[52] The Court rejects this argument as well.

First, it is not enough to show that the State may obtain defective lethal injection drugs. To establish that the entire *method* of execution – which includes all safeguards – violates the Eighth Amendment, the Plaintiff must show that there is a substantial risk that the defective drugs will be used on the Plaintiff, and that the drugs will then cause "serious illness and needless suffering." Even assuming that the March 2 incident supports the former, it undermines the latter. If anything, the March 2 incident shows that the State is *unlikely* to use defective drugs on the Plaintiff. Indeed, according to the Complaint, the Defendants had a doctor inspect the drugs prior to any use.[53] The doctor then consulted a pharmacist, who agreed that the drugs appeared

---

[51]    As of the filing of the Complaint, the Plaintiff's next execution date has not been decided.

[52]    Pl.'s Resp. Br., at 42-43 ("[The Plaintiff] . . . asserts that the events of March 2-3 demonstrate that Defendants' protocols and procedures present a 'substantial risk of significant harm,' and that they must not be allowed to again place her at risk.").

[53]    Compl., at 9.

"cloudy."[54] Once the Defendants were made aware of the safety concerns, they elected not to proceed with the execution.[55]

Second, the Plaintiff has also failed to adequately allege that there is a substantial risk that the drugs obtained for her future execution will be defective. To be sure, the Plaintiff does not allege that the drugs obtained for the March 2 execution were necessarily defective, or that they certainly would have caused "serious illness and needless suffering." Indeed, she acknowledges that it is currently "unclear why the drugs were cloudy."[56] According to the Plaintiff, all that is known "about the drugs . . . [is] that Defendants' own doctor and pharmacist deemed them 'inappropriate' for medical use."[57] But even assuming the drugs were defective, that alone does not necessarily mean that it is significantly likely that defective drugs will be obtained again.[58] The Plaintiff's claim still amounts to speculation, and the Eleventh Circuit has held that "speculation that a drug . . . will lead to severe pain or suffering cannot

---

[54]    Id.

[55]    Compl., at 11.

[56]    Compl., at 14.

[57]    Id.

[58]    See Baze v. Rees, 553 U.S. 35, 50 (2008) (" [A]n isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'").

substitute for" a showing "that the use of the drug is sure or very likely to cause serious illness and needless suffering."[59]

In response, the Plaintiff points out that the Defendants have refused to disclose the details regarding their investigation into the March 2 incident. This secrecy, the Plaintiff argues, inhibits her from accessing facts that may bolster her Eighth Amendment claim. A similar argument was made in Wellons v. Commissioner, Georgia Department of Corrections.[60] There, the plaintiff argued "that the Eighth Amendment entitles him to the information required to determine whether Georgia's lethal injection procedure is cruel and unusual."[61] Ultimately, the Eleventh Circuit rejected this argument.[62] However, in his concurring opinion in Wellons, Judge Wilson made note of the "disturbing circularity problem created by Georgia's secrecy law regarding methods of execution."[63] He acknowledged that it was "due to his lack of information" that the plaintiff failed to establish the level of risk necessary to

---

[59]    Wellons v. Commissioner, Georgia Department of Corrections, 754 F.3d 1260, 1265 (11th Cir. 2014) (internal quotation marks omitted).

[60]    754 F.3d 1260 (11th Cir. 2014).

[61]    Id. at 1264.

[62]    See id. at 1267.

[63]    Id. at 1267 (Wilson, J. concurring).

prevail on his Eighth Amendment claim.[64] But Judge Wilson nonetheless concurred. Although the plaintiff failed to establish an Eighth Amendment claim due to the State's secrecy, he nonetheless failed to establish an Eighth Amendment claim. The applicable Eighth Amendment standard does not fluctuate based upon the information a plaintiff has in his possession.[65] Here, similarly, it may be true that the Defendants' secrecy is the reason the Plaintiff cannot utilize the March 2 incident to establish an Eighth Amendment claim. But like in Wellons, this allegation of secrecy does not relieve her of the burden of coming forward with facts that are sufficient to state a plausible claim for relief. Accordingly, the Plaintiff's Eighth Amendment claim regarding the State of Georgia's lethal injection protocol should be dismissed.

---

[64]    Id.

[65]    Cf. Wilson v. Seiter, 501 U.S. 294, 302 (1991) (Eighth Amendment requirements may not be "ignored as policy considerations might dictate.").

## IV. Conclusion

For these reasons, the Court GRANTS the Defendants' Motion to Dismiss [Doc. 9].

SO ORDERED, this 10 day of August, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

In my view, the district court erred in dismissing one of the two Eighth Amendment claims pled by Ms. Gissendaner, i.e., the claim that Georgia is using compounded pentobarbital in an adulterated form in a way that creates a serious risk that she will be subjected to needless suffering during her upcoming execution.  And this error, I think, resulted in the improper denial of her motion for stay of execution.  As I see it, Ms. Gissendaner alleged enough to mount an as-applied challenge to Georgia's execution protocol and to obtain a stay.  With respect, I dissent.[1]

## I

On March 2, 2015, the day Georgia was scheduled to put Ms. Gissendaner to death, we issued an opinion rejecting her facial Eighth Amendment challenge to Georgia's lethal-injection protocol.  We held that her challenge was untimely, and that, in any event, it failed on the merits.  *See Gissendaner v. Comm'r*, 779 F.3d 1275, 1280–83 (11th Cir. 2015) (*Gissendaner I*).  With respect to the merits of the Eighth Amendment claim, we ruled that "[n]one of [Ms.] Gissendaner's factual allegations or evidence present facts that establish a high level of likelihood that she will suffer serious illness or needless suffering during her execution."  *Id.* at 1283 (alteration added).  But just hours after we issued our ruling, things changed, and they changed in a material way.

## A

---

[1] I agree with the majority that the district court properly dismissed the claim that Georgia officials violated the Eighth Amendment by leaving Ms. Gissendaner in a "state of uncertainty" for nearly 13 hours while it decided what to do after discovering the cloudy compounded pentobarbital.

According to Ms. Gissendaner's complaint, Georgia did not go through with the scheduled execution on the night of March 2, 2015, because the state's doctor and pharmacist each concluded that the compounded pentobarbital which was to be injected into her—the only drug now used by Georgia to carry out executions—was "visibly cloudy" and "not appropriate for medical use." Compl. at 6, 8–9. Although it is not known why the pentobarbital was cloudy, Georgia's counsel indicated that night that there was no problem with the state's supplier of the compounded drug, and said that "this batch [of drugs] just did not come out like it was supposed to." *Id.* at 9, 14 (alteration added). Georgia's counsel also said that the state would conduct an investigation. By the time Ms. Gissendaner filed her complaint, however, Georgia had not disclosed what it had done to investigate the cloudy pentobarbital or what, if anything, its investigation had revealed. And, according to the complaint, Georgia would not disclose such information due to its state secrecy law. *See* Ga. Code Ann. § 42-5-36(d) (classifying as a "confidential state secret" any identifying information concerning any person or entity participating in an execution).

Ms. Gissendaner alleged in her complaint that, according to her medical expert (whose declaration was attached), there is a foreseeable risk that the use of compounded drugs in lethal injections in Georgia would be substandard "in a manner that would cause severe pain upon or shortly after injection." Compl. at 14. That expert further opined that "[w]henever a solution that is supposed to be clear turns cloudy, it indicates one of a number of serious problems that make the drug *unusable and dangerous*." *Id.* at 15–16 (internal quotation marks omitted) (emphasis

26

original).  Finally, the expert opined that the possible explanations for the cloudy pentobarbital included that the compounding pharmacy lacks the expertise or ability to properly manufacture the drug, or that Georgia officials lack the equipment and training to properly store the drugs, and that either problem could create the risk of severe pain.  *Id.* at 16–20.

Had Ms. Gissendaner been injected with cloudy compounded pentobarbital containing particulate matter, she would have suffered "terrible pain," and if she had been injected with cloudy compounded pentobarbital with an improper pH she would have felt "intense, burning pain" upon injection.  *Id.* at 17–18.  The complaint also alleged that there had been three botched executions with compounded pentobarbital in Oklahoma, Texas, and South Dakota.  *Id.* at 19–20.

In addition, Ms. Gissendaner noted that Georgia ran afoul of the Food and Drug Administration by illegally importing sodium thiopental.  *Id.* at 25–26.  And since June of 2013, Georgia had been paying an unidentified doctor the sum of $5,000 to write prescriptions "for" condemned prisoners so that a pharmacy can then compound the pentobarbital that will be used at executions.  *Id.* at 28.  Citing § 42-5-36(d), Georgia has recently refused to provide any documents which shed light on how the pentobarbital is compounded, stored, or used, or on the qualifications of those who compound, obtain, or administer the pentobarbital.  *Id.* at 28–32.

Finally, Ms. Gissendaner alleged that many of the representations made by Georgia to the district court in *Gissendaner I* have been proven demonstrably false or are incapable of confirmation due to Georgia's penchant for secrecy.  These include claims that the compounded pentobarbital is exactly the same as the previous

FDA-approved pentobarbital; pentobarbital is difficult to compound; the state will not try to carry out executions if it does not have properly compounded pentobarbital; the prison team which carries out executions is qualified and experienced. *Id.* at 34–36.

**B**

The district court dismissed Ms. Gissendaner's as-applied Eighth Amendment claim for two reasons. First, although it recognized that there was a factual difference—the cloudy compounded pentobarbital on March 2—between this case and *Gissendaner I*, the district court concluded that the March 2 incident "shows that the state is *unlikely* to use defective drugs" on Ms. Gissendaner. D.E. 29 at 13 (emphasis original). Because a doctor and pharmacist agreed on March 2 that the compounded pentobarbital was cloudy, Georgia officials decided not to go forward with the execution. *See id.* at 13–14. Second, the district court ruled that Ms. Gissendaner "failed to adequately allege that there is a substantial risk that the drugs obtained for future execution will be defective." *Id.* at 14. The district court explained that Ms. Gissendaner had not alleged that the compounded pentobarbital was "necessarily defective," nor had she alleged that it would have "caused 'serious illness and needless suffering.'" *Id*. According to the district court, "even assuming that the drugs were defective, that alone does not necessarily mean that it is significantly likely that defective drugs will be obtained again. [Ms. Gissendaner's] claim still amounts to speculation[.]" *Id.* (alteration added).

**II**

28

The district court's Rule 12(b)(6) dismissal of Mr. Gissendaner's complaint generates plenary review. *See Lopez v. First Union Nat. Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997). This standard requires that we accept all factual allegations in the complaint as true and that we construe them in the "light most favorable" to Mr. Gissendaner. *See, e.g.*, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to make a claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 544 U.S. 550, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Significantly, the Court in *Iqbal* emphasized that "the plausibility standard is not akin to a 'probability requirement[.]'" *Id.*

## A

The district court did not accept as true all of the allegations in the complaint, and it did not construe the allegations in the light most favorable to Ms. Gissendaner. I would therefore reverse the dismissal of the complaint and remand for further proceedings.

It may be that, as the district court theorized, even if Georgia once again obtains "cloudy" compounded pentobarbital it is possible that such a defective drug will not be used on Ms. Gissendaner. After all, the state's doctor and pharmacist may again detect the problem and, as a result, Georgia officials might once again call off the execution. But that possible scenario does not construe the allegations in the

29

light most favorable to Ms. Gissendaner—to actually fairly to infer that if there is a problem with the supply of defective compounded pentobarbital (which Georgia's doctor and pharmacist agreed was "not appropriate for medical use") and Georgia has not been able to figure out what caused that problem, the problem is likely to recur. There is also no guarantee that a doctor or pharmacist will recognize the problem the next time, particularly if the compounded pentobarbital has an incorrect pH or is, despite its adulteration, only slightly cloudy. Ms. Gissendaner only had to allege enough to show the "substantive plausibility" of her Eighth Amendment claim, *Johnson v. City of Shelby*, 135 S.Ct. 346, 346 (2014), and I think she did that here.

Similarly, the district court erred by ruling that Ms. Gissendaner had not alleged sufficient facts to show that Georgia would once again obtain defective compounded pentobarbital. Let me explain why.

For starters, the district court's subsidiary rulings—that Ms. Gissendaner had not alleged that the pentobarbital on March 2 was necessarily defective or that its use on her would have caused needless suffering—are simply wrong. As to the first point, Ms. Gissendaner alleged that the compounded pentobarbital was cloudy, that the state's doctor and pharmacist each concluded that it was "not appropriate for medical use," that a lawyer for the state indicated that there was a problem with the batch that the dose came from, and that Georgia officials decided to stop the execution. If that is not enough to allege that the compounded pentobarbital on March 2 was defective, then I've completely misunderstood *Twombly* and *Iqbal*. As for the second point, Ms. Gissendaner quoted her medical expert, who opined that if

30

the defective compounded pentobarbital had been administered she would have suffered severe and terrible pain. I cannot understand how or why that is insufficient to allege needless suffering.

Turning to the question of Georgia once again obtaining defective drugs, Ms. Gissendaner alleged that Georgia had not figured out what caused the problem on March 2, and that the state was not revealing the relevant documents which might explain exactly what had happened. It is certainly plausible to conclude, at the Rule 12(b)(6) stage, that if a state has received defective compounded drugs for use in an execution, does not know what caused the problem, and is choosing not to disclose what happened and how, the problem is likely to recur (at least until the problem is diagnosed or solved). Again, plausibility is not probability. *See Iqbal*, 556 U.S. at 678. *Cf. O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.").

Georgia can certainly choose, as a matter of state law, to keep much of its execution protocol secret, but it cannot hide behind that veil of secrecy once something has gone demonstrably wrong with the compounded pentobarbital it has procured. *See Wellons v. Comm'r*, 754 F.3d 1260, 1267–68 (11th Cir. 2014) (Wilson, J., concurring). It is not asking too much to require Georgia to put on some evidence that will provide some level of confidence that its compounded pentobarbital is no longer a problem.[2]

---

[2] I recognize that, in response to the complaint, Georgia filed a number of affidavits and exhibits concerning its investigation into the events of March 2, but the district court made it clear at the hearing on September 28, 2015, that it was not considering any of those filings under Rule

31

To obtain a stay of execution, Ms. Gissendaner must show that she has a substantial likelihood of success on the merits, that she will suffer irreparable injury in the absence of a stay, that Georgia will not be substantially harmed from the grant of a stay, and that the stay would not be adverse to the public interest. *See Valle v. Singer*, 655 F.3d 1223, 1228 (11th Cir. 2011). Our review of the district court's denial of Ms. Gissendaner's motion for stay of execution is of course deferential, *see Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011) (holding that denial of motion for stay of execution is reviewed for abuse of discretion), but an abuse of discretion can occur when a court uses the wrong legal standard or misapplies the correct legal standard. *See, e.g.*, *Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015). Here, as explained above, the district court failed to accept the complaint's factual allegations as true and failed to take them in the light most favorable to Ms. Gissendaner. That misapplication of the Rule 12(b)(6) standard constituted an abuse of discretion.

That abuse of discretion, moreover, affected the district court's denial of Ms. Gissendaner's motion for stay of execution. The first reason the district court gave for denying the stay was that it had dismissed the complaint, and as a result of that dismissal, Ms. Gissendaner could not show a substantial likelihood of success on the merits. *See* D.E. 41 at 3. At the very least, we should remand the matter to the

---

12(b)(6). I do not consider them either, and express no view on what they might or might not show concerning the current state of affairs.

32

district court for its consideration the motion for stay of execution based on Ms. Gissendaner's sufficient Eighth Amendment claim.[3]

The second reason the district court provided for denying the stay was that Ms. Gissendaner's Eighth Amendment challenge was foreclosed by two Eleventh Circuit cases—*Wellons* and *Gissendaner I*. *Id.* at 4. I think the district court was mistaken in this respect, as these two decisions do not concern an as-applied challenge to Georgia's one-drug execution protocol. In *Wellons*, where the challenge, a facial one, was to Georgia's use of compounded pentobarbital, we held that "Wellon's argument that the compounded pentobarbital may be defective or the personnel administering the execution may be untrained is insufficient to establish a substantial likelihood of success on the merits of his Eighth Amendment claim." 754 F.3d at 1265. And in *Gissendaner I* we ruled that a similar facial claim was insufficient. 779 F.3d at 1283. Importantly, there were no allegations in *Wellons* or *Gissendaner I* that Georgia had in fact obtained a defective/adulterated sample of compounded pentobarbital for use in an execution (as it did on March 2), or that Georgia did not know what led to the problem with the compounded pentobarbital, or that Georgia was refusing to disclose what it had learned in its investigation of the problem. Those, of course, are the additional and critical allegations Ms. Gissendaner now makes based on the events (and aftermath) of March 2.

I offer one final thought. A death-row prisoner who is mounting a facial challenge to a state's execution protocol must show not only that the protocol is sure

---

[3] On remand, the district court could of course consider the affidavits and exhibits submitted by Georgia, as well as any other documents filed by Ms. Gissendaner, in evaluating the motion for stay of execution. The district court could also hold an evidentiary hearing and consider additional evidence presented by the parties on the issue of the compounded pentobarbital.

to cause, or very likely to cause, serious illness and needless suffering, but also that "any risk of harm is substantial when compared to a known and alternative method of execution." *Glossip v. Gross*, 135 S.Ct. 2726, 2737–38 (2015). But where a prisoner like Ms. Gissendaner alleges that, based on recent experiences, a facially constitutional execution protocol is being carried out in an unconstitutional manner (*e.g.*, that the state's electric chair is malfunctioning, or that the state is getting defective compounded drugs for lethal injections), I do not think she is required to "identify an alternative method of execution." *See Bucklew v. Lombardi*, 783 F.3d 1120, 1129 (8th Cir. 2015) (en banc) (Bye, J., concurring in the result). We have differentiated between facial and as-applied challenges to execution protocols, *see Siebert v. Allen*, 506 F.3d 1047, 1049–50 & n. 3 (11th Cir. 2007) (reversing denial of motion for stay of execution with respect to as-applied challenge, but affirming denial with respect to facial challenge), and that makes sense to me. If a state merely has to fix a correctable problem to eliminate an as-applied challenge, there is no need for a prisoner to allege (or show) that a different alternative method of execution is available to the state.

## III

As I read her complaint, Ms. Gissendaner has stated a sufficient and viable as-applied Eighth Amendment claim. I would therefore reverse the dismissal of the complaint and remand for the district court to reconsider Ms. Gissendaner's motion for stay of execution.