# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3061
_____

Cara Miller

*Plaintiff - Appellant*

v.

Honkamp Krueger Financial Services, Inc.

*Defendant - Appellee*

Blucora, Inc.

*Defendant*

------------------------------

Mariner Wealth Advisors, LLC

*Third Party Defendant - Appellant*

_____

No. 20-3081
_____

Cara Miller

*Plaintiff - Appellant*

v.

Honkamp Krueger Financial Services, Inc.

*Defendant - Appellee*

Blucora, Inc.

*Defendant*

------------------------------

Mariner Wealth Advisors, LLC

*Third Party Defendant - Appellant*

_____

No. 20-3400
_____

Cara Miller

*Plaintiff - Appellant*

v.

Honkamp Krueger Financial Services, Inc.

*Defendant - Appellee*

Blucora, Inc.

*Defendant*

------------------------------

Mariner Wealth Advisors, LLC

*Third Party Defendant - Appellant*
_____

Appeals from United States District Court
for the District of South Dakota - Western
_____

Submitted: March 18, 2021
Filed: August 24, 2021
_____

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Cara Miller left her employment at Honkamp Krueger Financial Services, Inc. ("HKFS") and commenced this action, seeking a declaratory judgment that the restrictive covenants in her various employment contracts were unenforceable. HKFS brought counterclaims against Miller and a third-party complaint against Miller's new employer, Mariner Wealth Advisors, LLC ("Mariner"). HKFS successfully sought preliminary injunctions enjoining Miller from breaching the non-compete and non-solicitation provisions in her employment contracts. Miller and Mariner appeal. We reverse and vacate the preliminary injunctions.

## I. BACKGROUND

In 2006, Miller entered into a written employment agreement with HKFS (the "Employment Agreement") and began working as a financial advisor. The Employment Agreement contained restrictive covenants, including non-compete and non-solicitation provisions. On July 25, 2016, Miller and HKFS entered into an

Agreement Ancillary to Employment (the "Ancillary Agreement") that updated the non-solicitation provision. Notably, the Ancillary Agreement did not include a non-compete provision.

Blucora, Inc. acquired HKFS and Miller responded by terminating her employment on September 4, 2020. That same day she commenced this action against HKFS and Blucora seeking a declaration that the restrictive covenants in the Ancillary Agreement are unenforceable. Miller immediately began working for Mariner who is a direct competitor of HKFS.

On September 7, 2020, Miller sent a letter to John Darrah, the chief executive officer for HKFS, informing him that she was terminating the Employment Agreement to the extent it survived the Ancillary Agreement. The next day she amended her complaint, alleging that the Employment Agreement was superseded by the Ancillary Agreement (which would have the effect of abrogating the Employment Agreement's non-compete provision).

HKFS answered the amended complaint, filed a third-party complaint against Mariner, and raised a number of counterclaims against Miller. HKFS then moved for a preliminary injunction against Miller, seeking to enforce, among other things, the non-compete and non-solicitation provisions. Following a two-day evidentiary hearing, the district court entered an oral order enforcing the non-compete provision, which it subsequently supplemented with a written Memorandum and Order. The district court also requested and received supplemental briefing on the non-solicitation provision, which it considered before granting a preliminary injunction with respect to that restrictive covenant. Miller and Mariner appeal.

## II.  DISCUSSION

We review a district court's grant of a preliminary injunction for abuse of discretion. See PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1142 (8th Cir.

-4-

2007). A district court abuses its discretion when it "rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." Jones v. Kelley, 854 F.3d 1009, 1013 (8th Cir. 2017) (per curiam) (citation omitted). A district court's interpretation of a contract is a legal question that we review *de novo*. See MPAY Inc. v. Erie Custom Comput. Applications, Inc., 970 F.3d 1010, 1015–16 (8th Cir. 2020).

When deciding a motion for a preliminary injunction, the district court must consider the familiar Dataphase factors, which include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "The likelihood of success on the merits is the most important of the Dataphase factors." Craig v. Simon, 980 F.3d 614, 617 (8th Cir. 2020) (per curiam) (cleaned up). In considering the likelihood of success on the merits, a movant must show that it has at least a "fair chance of prevailing." Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013) (quoting Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir.2008) (en banc)).

On appeal, Miller and Mariner challenge the district court's determination that HKFS was likely to succeed on its breach of contract claim with respect to the non-compete and non-solicitation provisions. We analyze each of the provisions in turn.

A.    **Non-Compete Provision**

The district court, finding that HKFS was likely to prevail on its breach of contract claim, preliminarily enjoined Miller "from taking action of any character that results in violation of or interference with the non-competition provisions of the Employment Agreement, including, but not limited to, continued employment with

Mariner."[1]  Miller and Mariner present two main arguments in support of their claim that the issuance of the non-compete injunction was an abuse of discretion.  First, they argue the Ancillary Agreement, which did not contain a non-compete provision, superseded the non-compete provision in the Employment Agreement.  Second, they argue the non-compete provision did not survive her termination of the Employment Agreement.  We find Miller and Mariner's second argument persuasive and therefore do not address their first argument.

> The Employment Agreement contains the non-compete provision:

> Employee further covenants that for a period of one year following the termination of Employee's employment for whatever reason, Employee will not, within the Company's market area, directly or indirectly, either as a sole proprietor, partner, stockholder, director, officer, employee, consultant or in any other capacity, conduct or engage in, or be interested in or associated with, any person or entity which engages in the "Business" (as defined above), working with CPA firms.  For purposes of this Paragraph, the "Company's market area" includes, but is not limited to, any state in which HKFS has conducted business at any time in the preceding twelve months.

By its terms, the non-compete provision survived the termination of Miller's "employment."  But there is nothing in the non-compete provision to suggest the parties intended it to survive the termination of the Employment Agreement.  And the contract treats the term of employment and the term of the Employment Agreement as two distinct concepts.  See Fulton v. Honkamp Krueger Fin. Servs., No. 20-CV-1063 (PJS/DTS), 2020 WL 7041766, at *3–4 (D. Minn. Dec. 1, 2020)

---

[1]During the pendency of this appeal, Miller and Mariner moved for the district court to clarify the preliminary injunction.  The district court granted this motion, in part, adding to the injunction the Employment Agreement's definition of "Business" and striking the phrase"includes, but is not limited to" from the language outlining the geographic boundaries.  These revisions are not material to our decision here.

(reviewing an identical non-compete provision in an employment contract between HKFS and a different former employee and determining that the contract distinguished between the term of employment and the term of the employment agreement such that the termination of the agreement abrogated the non-compete provision).

Specifically, Section 2 of the Employment Agreement provides: "**Term.** Employment is at will; however the parties agree that either party may terminate the Agreement on written notice." The subject of the two clauses is not the same. The first clause "employment is at will" refers to the term of employment, while the second clause allowing either party to "terminate the Agreement on written notice" refers to the term of the Employment Agreement. The meaning of Section 2 is plain: the first clause provides that employment is "at will," and the second clause instructs that the Employment Agreement is freely terminable on written notice. By its plain meaning, Miller could quit or be fired at any time or for any reason; however, written notice was required to terminate the Employment Agreement.

Section 2's distinction between the term of employment and the term of the Employment Agreement is critical because, as noted above, the non-compete provision only survives the termination of Miller's employment. There is nothing in the non-compete provision to suggest that it survives the termination of the Employment Agreement. It follows that when Miller left her employment with HKFS on September 4, the non-compete provision remained in force, assuming, *arguendo*, that the Ancillary Agreement did not supersede the Employment Agreement with respect to the non-compete provision. Nonetheless, when Miller terminated the Employment Agreement in writing on September 7, the non-compete provision became inoperable.

We understand this may not be the result HKFS envisioned when it drafted the Employment Agreement. Indeed, the Employment Agreement is no exemplar of precision; it is possible that HKFS actually intended for the term of employment and the term of the Employment Agreement to be coextensive. But that is not what the contract actually says. We will not rewrite an unambiguous provision. In addition, even if the Employment Agreement were ambiguous, the result would not change. Under Iowa law,[2] we would be required to construe the Agreement in favor of Miller. See Blackman v. Folsom, 200 N.W.2d 542, 542–43 (Iowa 1972) (non-compete agreements are "strictly construed against the one seeking to restrain another from pursuing his profession, business or employment").

Because HKFS is not likely to prevail on the merits of its breach of contract claim with respect to the non-compete provision, the district court erred in enjoining Miller from violating that provision.[3]

## B.    Non-Solicitation Provision

The district court determined that HKFS was likely to prevail on its breach of contract claim with respect to the non-solicitation provision and ordered Miller not

---

[2]The Employment Agreement contains an Iowa choice-of-law provision and the parties agree that, pursuant to South Dakota's choice-of-law rules, Iowa law applies to the non-compete provision.

[3]We note that Miller's arguable violation of the non-compete provision between September 4 and September 7 is insignificant to our analysis because any breach of that provision ended with the termination of the Employment Agreement on September 7. Any breach during those three days cannot give rise to a future threat of irreparable harm since there is no ongoing breach. "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." DTC Energy Grp., Inc. v. Hirschfeld, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted).

to "solicit, accept, or divert business from . . . any end client of HKFS with which Miller had any contact as a result of her employment with HKFS within the last year of her employment." On appeal, Miller and Mariner contend the non-solicitation provision (and the corresponding injunction) impermissibly prohibits Miller from accepting unsolicited business from her former clients. We agree.

The parties agree that the Ancillary Agreement superseded the Employment Agreement with respect to the non-solicitation provision. The relevant provision in the Ancillary Agreement provides:

> Notwithstanding and in addition to the above, during Employee's employment and for a period of two years after he/she ceases to be employed by Employer, Employee shall not, directly or indirectly, solicit, accept or divert business from, provide, or attempt to convert to other methods of using, the same or similar products or services provided by Employer, any client, account or location of Employer with which Employee has had any contact as a result of his/her employment either before or after the date hereof by Employer, including clients with respect to whom Employee performed professional services prior to his/her employment with Employer.

As an initial matter, the parties dispute which law applies to the non-solicitation provision. The district court applied Iowa law pursuant to a choice-of-law clause in the Ancillary Agreement. Miller and Mariner argue that South Dakota law applies and that, unlike Iowa law, South Dakota does not enforce contracts that prohibit a person from accepting unsolicited business.

A federal court sitting in diversity applies state substantive and federal procedural law. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). Because contract interpretation is substantive, see, e.g., N. Oil & Gas, Inc. v. Moen,

808 F.3d 373, 376 (8th Cir. 2015), we apply state law. "In determining which state's law applies, we look to the choice of law principles of the forum state," Am. Fire & Cas. Co. v. Hegel, 847 F.3d 956, 959 (8th Cir. 2017), which here is South Dakota. Under South Dakota law, courts honor contractual choice-of-law provisions unless they contravene South Dakota public policy. See Dunes Hosp., L.L.C. v. Country Kitchen Int'l, Inc., 623 N.W.2d 484, 488 (S.D. 2001).

Since the Ancillary Agreement contains an Iowa choice-of-law provision, Iowa law applies unless it contravenes South Dakota public policy. Because the non-solicitation provision here, at least in part, violates South Dakota public policy, we apply South Dakota law. In so doing, we note the South Dakota Supreme Court has made clear that "[t]he general rule against contracts in restraint of a lawful profession, trade, or business is a legislative expression of public policy." Farm Bureau Life Ins. Co. v. Dolly, 910 N.W.2d 196, 201 (S.D. 2018). South Dakota law provides: "Any contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53-9-9 to 53-9-12, inclusive." S.D. Codified Laws § 53-9-8.

One of the specified statutory exceptions permits an employee to "agree with an employer . . . not to solicit existing customers of the employer within a specified county, first- or second-class municipality, or other specified area for any period not exceeding two years from the date of termination of the agreement, if the employer continues to carry on a like business therein." S.D. Codified Laws § 53-9-11. However, the South Dakota Supreme Court has noted the importance of distinguishing between agreements not to solicit customers and agreements not to sell to certain customers or accept unsolicited business. See Dolly, 910 N.W.2d at 200. The court has also stated that the statutory exceptions "must be construed narrowly so as to promote the prohibition against contracts in restraint of trade." Commc'n Tech. Sys. v. Densmore, 583 N.W.2d 125, 128 (S.D. 1998) (citation omitted).

-10-

Under the plain language of the non-solicitation provision at issue (as well as under the preliminary injunction), Miller is prohibited from accepting certain unsolicited business. This prohibition is a restraint on the exercise of trade. None of the enumerated statutory exceptions allow for agreements not to accept unsolicited business. We will not read into the statute an exception that the South Dakota legislature did not adopt.

Our decision is consistent with the South Dakota Supreme Court's recent decision in Dolly. There, the court held that § 53-9-12(2)'s exception permitting non-solicitation agreements in the insurance industry does not extend to agreements not to sell and that agreements not to sell are void pursuant to § 53-9-8. Section 53-9-12(2) is nearly identical in all relevant respects to § 53-9-11.[4] Given the substantial similarities between the two statutes, we find the court's reasoning in Dolly persuasive to our interpretation of § 53-9-11. See Densmore, 583 N.W.2d at 133 (Miller, C.J., concurring) (explaining a contract cannot prevent former employees from accepting clients of their former employers because clients are not parties to the contract and should be allowed to choose with whom they want to do business); 1st Am. Sys., Inc. v. Rezatto, 311 N.W.2d 51, 59 (S.D. 1981) (finding a restrictive covenant overbroad because it "plac[ed] an undue burden on appellee and the public to the extent that [it] prohibit[ed] accepting appellant's customers' business").

The South Dakota legislature has created a general prohibition on contracts that restrain trade, with limited, specified exceptions. While non-solicitation agreements

---

[4]Section 53-9-12(2) permits independent contractors selling certain insurance products to agree "[n]ot to solicit existing customers of the insurer within a specified county, first or second class municipality, or other specified area for any period not exceeding two years from the date of termination of the agreement, if the insurer continues to carry on a like business within the specified area."

are one such exception, the exception does not extend to agreements not to accept unsolicited business. The South Dakota legislature has sought to balance the interests of employers with the interests of consumers in deciding with whom they want to do business. We will not disturb this balance.

## III. CONCLUSION

HKFS is not likely to prevail on the merits of its breach of contract claim with respect to the non-compete provision. Likewise, because the non-solicitation agreement, in part, violates South Dakota law and public policy, the non-solicitation provision is, at least in part, unenforceable. HKFS is therefore unable to prevail on its breach of contract claim to the extent that it relied on Miller's acceptance of unsolicited business. Because the district court relied on its decision to the contrary in weighing the Dataphase factors, we must vacate the entire preliminary injunction. We reverse and vacate the preliminary injunctions with respect to both the non-compete and non-solicitation provisions, and do not reach the remaining issues raised by Miller and Marin.[5]

_____

_____

[5]During the pendency of this appeal, Miller and Mariner filed two motions to supplement the record. "Generally, an appellate court cannot consider evidence that was not contained in the record below." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993). While we have discretion to enlarge the record when the interests of justice demand it, we decline to do so in this case. Miller and Mariner's motions to supplement the record are denied.