# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-2563
_____

Wilbur-Ellis Company, LLC

*Plaintiff - Appellee*

v.

Kevin Erikson; J.R. Simplot Company

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of South Dakota
_____

Submitted: March 1, 2024
Filed: June 6, 2024
_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Kevin Erikson left his job at Wilbur-Ellis Company, LLC to work for a competitor, the J.R. Simplot Company. Wilbur-Ellis successfully sought a preliminary injunction enjoining Erikson from competing or soliciting customers within 100 miles of McCook County, South Dakota. Erikson now appeals. We reverse and vacate the preliminary injunction.

# I.

In 2015, Wilbur-Ellis purchased a South Dakota company, Lacey's Farmacy, Inc. Erikson was an employee of Lacey's and did not receive any money from the sale. He did, however, sign an employment agreement (the Agreement) as part of the acquisition.

The Agreement had a set four-year term (the Duration Clause) that terminated at the "close of business on [March 31,] 2019." Erikson could only be terminated for cause through the duration of the Agreement. During the term, Erikson would have base compensation and eligibility for annual bonuses. Additionally, Erikson had the opportunity to obtain a retention bonus if still employed at completion of the four-year term. Following completion of the Agreement, Erikson could continue to work for Wilbur-Ellis as an "at-will" employee.

The Agreement also contained a non-competition and non-solicitation provision (Restrictive Covenants), as well as a confidentiality and nondisclosure provision. Per these provisions, Erikson agreed not to engage in any "Competitive Business" or disclose Wilbur-Ellis's confidential information. The Restrictive Covenants prevented Erikson from taking employment with or soliciting from Wilbur-Ellis's customers or employees within a 100-mile radius of McCook County for a term of two years after his "employment" was terminated.

Additionally, Wilbur-Ellis and Erikson agreed that obligations and rights could survive the expiration of the Agreement if expressly provided. Specifically, Section 21 of the Agreement (Survival Clause) stated in relevant part:

> For the avoidance of doubt, the expiration or termination of this Agreement shall not be deemed a release or termination of any obligations of Employee, or rights of Employer, ***to the extent such obligations or rights***, as the case may be, ***expressly survive the termination of this Agreement***.

(emphasis added). Put differently, Erikson could still be bound by certain obligations, or have access to certain benefits, after the Agreement terminated *if* the provision "expressly survive[d] the termination of th[e] Agreement."

Nearly four years after termination of the Agreement, on March 20, 2023, Erikson resigned from Wilbur-Ellis and began working for Simplot, a competitor of Wilbur-Ellis located in the restricted region.

One month after Erikson's resignation, Wilbur-Ellis commenced this lawsuit and filed a motion for a temporary restraining order and a preliminary injunction. Among other claims, Wilbur-Ellis argued Erikson breached the Agreement by violating the Restrictive Covenants. The district court held an evidentiary hearing on the motion for temporary restraining order, and the parties stipulated that the district court's ruling would also act as its ruling on the motion for preliminary injunction.

The district court granted Wilbur-Ellis's motion for preliminary injunction, holding Wilbur-Ellis was likely to succeed on the merits of its breach of contract claim against Erikson. In reaching its decision, the district court concluded the Restrictive Covenants survived the termination of the Agreement and remained enforceable against Erikson at the time of his resignation in 2023. On appeal, Erikson argues the Restrictive Covenants were not enforceable against him because the Agreement terminated on March 31, 2019, and the Restrictive Covenants did not survive the termination date.

## II.

We review the grant of a preliminary injunction for abuse of discretion. *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1142 (8th Cir. 2007). "A district court abuses its discretion when 'it rests its conclusions on clearly erroneous factual findings or erroneous legal conclusions.'" *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1013–14 (8th Cir. 2021) (quoting *Jones v. Kelley*, 854 F.3d 1009,

-3-

1013 (8th Cir. 2017)). Contract interpretation is a question of law we review de novo. *See Schulte v. Progressive Ins.*, 699 N.W.2d 438 (S.D. 2005); *see also MPAY, Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015–16 (8th Cir. 2020). Our analysis of this issue is governed by South Dakota law given the South Dakota choice-of-law provisions in the Agreement, the application of which no party disputes. *See Progressive Ins. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (applying state law because the state court was the forum "and neither party . . . raised a choice-of-law claim").

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789–90 (8th Cir. 1989) (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)). The court considers four factors when reviewing a district court's grant of a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). "While 'no single factor is determinative,' the probability of success factor is the most significant." *Home Instead*, 721 F.3d at 497 (quoting *Dataphase*, 640 F.2d at 113). Erikson challenges only the district court's determination that Wilbur-Ellis was likely to succeed on its breach of contract claim.

Erickson claims the district court erred in granting a preliminary injunction based on enforcement of the Restrictive Covenants in the Agreement. We agree. By the Agreement's plain terms, the Restrictive Covenants did not contain "express[]" language sufficient to extend their application beyond the Agreement's termination date. Thus, the Restrictive Covenants expired at the same time as the Agreement.

When interpreting a contract, the court "must give effect to the intention of the contracting parties." *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 709 N.W.2d 350, 355 (S.D. 2006). "To determine intent, we look 'to the language that the parties used in the contract[.]'" *Tri-City Assocs., L.P. v. Belmont, Inc.*, 845 N.W.2d 911, 915 (S.D. 2014) (quoting *Poeppel v. Lester*, 827 N.W.2d 580, 584 (S.D. 2013) (alternation in original)). "In order to ascertain the terms and conditions of a contract, [the court] must examine the contract as a whole and give words their 'plain and ordinary meaning.'" *Gloe v. Union Ins.*, 694 N.W.2d 252, 260 (S.D. 2005) (quoting *Elrod v. General Cas. Co. of Wis.*, 566 N.W.2d 482, 486 (S.D. 1997)).

As mentioned above, the Agreement's term lasted until March 31, 2019. Wilbur-Ellis and Erikson agreed, however, that Erikson would be obligated to abide by certain provisions after March 31, 2019, if the Agreement "expressly" provided they "survive the termination of th[e] Agreement." This means the Survival Clause's application is conditional and triggered only if a provision "expressly" says its obligations continue past the Agreement's end date. While Wilbur-Ellis claims the Restrictive Covenants triggered the Survival Clause, they did not do so "expressly." The Agreement specifically states the Restrictive Covenants are provisions of "this Agreement," which "terminate[d] at the close of business on [March 31], 2019." Despite this clear language, the Duration Clause does not include express language extending the Restrictive Covenants beyond March 31, 2019. Neither do the Restrictive Covenants or the Survival Clause contain such an extension. And the parties made these drafting decisions knowing South Dakota law expressly provides non-competition provisions cannot exceed "two years from the date of *termination of the agreement*[,]" South Dakota Codified Laws § 53-9-11 (emphasis added),[1] and that "exceptions [to the statute] 'must be construed narrowly

---

[1]Wilbur-Ellis argues the Survival Clause is rendered meaningless unless there were provisions in the Agreement that survived the expiration of the term. We agree and think some provisions survived. For example, the Agreement's at-will employment provision took effect only after the Agreement terminated. Section 2 begins by stating the Agreement would terminate on March 31, 2019. The sentence

-5-

so as to promote the prohibition against contracts in restraint of trade.'" *Farm Bureau Life Ins. v. Dolly*, 910 N.W.2d 196, 201 (S.D. 2018) (quoting *Commc'n Tech. Sys., Inc. v. Densmore*, 583 N.W.2d 125, 128 (S.D. 1998)).

The Agreement's stated purpose reinforces this interpretation. The Agreement specifies its "restrictions and limitations" are "necessary to protect [Wilbur-Ellis's] goodwill . . . ." Generally, Wilbur-Ellis does not require its sales staff to sign agreements containing restrictive covenants. Instead, it only binds staff to restrictive covenants if they are part of an acquisition. This gives Wilbur-Ellis time to transition the business and protects the goodwill it purchased should an employee leave during the specified duration. In this case, Wilbur-Ellis chose four years as the amount of time it needed to recuperate its goodwill.

It follows that the Restrictive Covenants would apply to Erikson during the four-year term of the Agreement. If Erikson resigned before the expiration of the four-year term, or if Wilbur-Ellis had cause to terminate him during that time, the Agreement would not have been fully performed, and Erikson would have been bound by the Restrictive Covenants. Here, however, Erikson and Wilbur-Ellis performed the obligations they owed each other, and thus, the Agreement terminated on March 31, 2019, as did the Restrictive Covenants.

In the end, we apply the language of the Agreement as drafted, not as the parties wished it was drafted. *See Edgar v. Mills*, 892 N.W.2d 223, 231 (S.D. 2017) ("Contracting parties are held to the terms of their agreement, and disputes cannot be resolved by adding words the parties left out.") (quoting *Gettysburg Sch. Dist.*

immediately following says, "*[t]hereafter*, the employment of [Erikson] . . . shall continue at will . . . ." (emphasis added). The same goes for the Agreement's retention bonus provision. Section 8 specifies Erikson would be "eligible for a retention bonus" if still employed by Wilbur-Ellis at *completion* of the four-year term. Because these provisions' application took effect only after the Agreement ended, they would be rendered meaningless unless the Survival Clause kept them alive. That is not the case with the Restrictive Covenants, whose application was in full effect during the term of the Agreement.

*53–1 v. Larson*, 631 N.W.2d 196, 200–01 (S.D. 2001)). The parties could have included express language that would have extended the application of the Restrictive Covenants. They did not. As a result, the district court abused its discretion when issuing a preliminary injunction enforcing the Restrictive Covenants.

### III.

Wilbur-Ellis is not likely to prevail on the merits of its breach of contract claim. Because the district court relied on its decision to the contrary in weighing the *Dataphase* factors, we reverse the district court and vacate the preliminary injunction.

_____