# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1612
_____

Sandra Short; David Short; Donald Short; Sarah Sarbacker

*Plaintiffs - Appellees*

v.

Billings County, a political subdivision of the State of North Dakota; Lester Iverson, Billings County Commissioner, in his official capacity; Steven Klym, Billings County Commissioner, in his official capacity; Dean Rodne, Billings County Commissioner, in his official capacity

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: October 24, 2024
Filed: May 28, 2025
_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.
_____

SMITH, Circuit Judge.

Billings County and Billings County Commissioners[1] (collectively, "County") appeal the district court's grant of a preliminary injunction to enjoin the County from entering onto the property of Sandra Short, David Short, Donald Short, and Sarah Sarbacker (collectively, "the Shorts"), during the pendency of the Shorts' case against the County in federal court, as well as a state court proceeding. Because the Shorts are not likely to prevail on the merits of their breach-of-contract claim against the County, we vacate the preliminary injunction and remand for further proceedings consistent with this opinion.

## I. *Background*

At issue in this case is the County's exercise of eminent domain of the Shorts' land to construct a bridge over the Little Missouri River, known as the Little Missouri River Crossing (LMRC). In March 2020, the County began condemnation proceedings for the Shorts' property to construct the LMRC. But before the official start of the condemnation action, the Shorts preemptively sued the County. The parties litigated whether the County violated the Shorts' constitutional rights; the Shorts sought a declaration that the taking was not necessary or for a public purpose under federal or North Dakota law. *See Short v. Billings County*, No. 1:20-cv-79 (D.N.D.) ("Original Case").

The Original Case settled in 2021. The parties executed a Settlement Agreement, which provides in relevant part:

> NOW, THEREFORE, THE PARTIES STIPULATE that, *the County having agreed it will not pursue eminent domain to condemn any of the Short property for a Little Missouri River Crossing or pursue any legal action against the Shorts to condemn their property* and having made

---

[1]The County Commissioners are Lester Iverson, Steven Klym, and Dean Rodne.

the motion stated, the lawsuits referenced above will be dismissed, and the Shorts will not pursue the above-referenced lawsuits whether in the original forum or through any appeals, and within fourteen (14) days of execution of this agreement, the Shorts will dismiss any lawsuits referenced above that remain pending with prejudice, and without fees, costs, or expenses awarded by the court to either party and with each party agreeing to bear its own fees, costs, and expenses.

R. Doc. No. 1-8, at 2 (emphasis added).

Despite the Settlement Agreement, on February 7, 2023, a newly elected Board of Commissioners[2] voted to "proceed with the Little Missouri River crossing bridge project in the selected location within the [Shorts' property]." R. Doc. 1-14, at 3. On June 23, 2023, the County offered the Shorts $20,000 per acre for 29.86 acres and $500 per acre per year for 12.10 acres as a temporary easement for construction. Under this proposal, the County had five years to finalize the conditions precedent to beginning construction of the LMRC. On July 26, 2023, the County notified the Shorts that they had one week to respond to its June 23 offer.

The Shorts did not respond to the County's offer. Instead, they filed the present action in federal court on August 2, 2023. They asserted five claims: (1) breach of contract under North Dakota law; (2) promissory estoppel under North Dakota law; (3) a declaratory judgment that the condemnation is not for public use under the Fifth Amendment; (4) a declaratory judgment the condemnation is not for public use under Article 1, Section 16 of the North Dakota Constitution and N.D. Cent. Code § 32-15-05(1); and (5) a declaratory judgment stating there is a lack of necessity under N.D. Cent. Code § 32-15-05(2). That same day, the County passed a resolution condemning the Shorts' parcels necessary for the LMRC.

_____

[2]The election occurred on November 8, 2022. Former Commissioner Mike Kasian lost his election to Steven Klym.

On August 7, 2023, the County effectuated the condemnation of the Shorts' property by filing the required notices and deposits with the Clerk of the District Court for Billings County, North Dakota. The County used a quick-take condemnation proceeding to take possession of the Shorts' property. As a result, possession of the condemned property vested in the Board of Commissioners immediately upon the County's filing of the notices and deposits. *See* N.D. Const. art. I, § 16; N.D. Cent. Code §§ 11-10-26, 24-05-15.

On August 18, 2023, the Shorts moved for a preliminary injunction in federal district court to prevent the County from entering their land. The Shorts also sought a stay of the condemnation proceedings that had begun in state court. The County opposed this request and moved to dismiss the complaint. The County argued that the Settlement Agreement was invalid because a governmental entity cannot contract away its sovereign power of eminent domain.

On September 14, 2023, the Shorts appealed the quick-take condemnation proceeding to state district court. In their appeal, "the Shorts challenge[d] the findings of fact and conclusion of [the] County that condemnation is *necessary* and for *public use*." *Short v. Billings Cnty. Bd. of Cnty. Comm'rs*, No. 04-2023-cv-00010, at 1 (N.D. Dist. Ct., S.W. Jud. Dist., Billings Cnty. Oct. 18, 2024) (emphases added).

On March 6, 2024, the federal district court granted in part the Shorts' motion for preliminary injunction. In evaluating the Shorts' probability of success on the merits, "[t]he [c]ourt only consider[ed] the breach[-]of[-]contract claim." *Short v. Billings County*, 722 F. Supp. 3d 959, 970 (D.N.D. 2024). It determined that the Shorts demonstrated a likelihood of success on the merits of that claim based on the Settlement Agreement's language that the County "would not pursue any legal action to condemn their property in connection with the LMRC project." *Id.* at 972. According to the court, the County's subsequent decision to pursue the quick-take proceedings against the Shorts was "contrary to the plain language of the Settlement

-4-

Agreement." *Id.* In reaching its conclusion, the federal district court declined to consider the County's arguments challenging the Settlement Agreement's validity, leaving that for the state court to decide. The court stated:

> The Court is aware the Parties have raised the issue of the type of governmental action the County engaged in when it signed the Settlement Agreement and the validity of its agreement to refrain from building the LMRC—that is, its agreement not to exercise eminent domain. At this stage in the litigation, the Court refrains from deciding those issues because (1) the factual record is relatively undeveloped to determine the nature and extent of the contract and (2) this issue will likely become a consideration for the State Court proceeding to decide. At this stage, the Court simply limits its analysis to the traditional breach[-]of[-]contract claim in order to preserve the status quo pending the outcome of the litigation of the issues.

*Id.* at 971 n.1. After finding a likelihood of success on the breach-of-contract claim, the court presumed a finding of irreparable harm, and in turn, a favorable finding for the Shorts as to the balance of harms. The court enjoined the County and its agents from entering the Shorts' property "during the pendency of this case and the underlying [s]tate [c]ourt appeal." *Id.* at 979.

After finding that the Shorts were likely to succeed on their breach-of-contract claim and issuing preliminary injunctive relief, the court concluded, pursuant to the *Colorado River*[3] doctrine, that "this case and the [s]tate [c]ourt case are parallel and extraordinary circumstances justify abstaining from hearing this case at this time." *Id.* at 978. The court found "a substantial likelihood" that the five claims brought in federal court would "be addressed by the pending [s]tate [c]ourt proceeding." *Id.* at 974. The court noted that "the claims for lack of necessity and lack of public use from the taking and that the taking was unconstitutional are expressly noted in the

---

[3]*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

administrative appeal." *Id.* It also concluded that "[t]he claims for breach of contract and promissory estoppel should also be asserted in the [s]tate [c]ourt action" but recognized that it was for "the [s]tate [c]ourt to decide" "whether the Shorts can assert their breach of contract and promissory estoppel claims in the [s]tate [c]ourt proceeding." *Id.* As a result, the federal district court stayed its proceedings. But it added that "[i]n the event the [s]tate [c]ourt prohibits the Shorts from asserting each of their claims in that case, they may file a motion to lift the stay and proceed with those claims." *Id.* at 978–79.

After staying the federal proceeding pending the outcome of the state proceeding, the district court declined to rule on the County's motion to dismiss. It denied the dismissal motion without prejudice and explained that the County could reassert the motion "[i]n the event the stay is lifted and this case proceeds on any of the claims." *Id.* at 979. It also denied the Shorts' motion to preliminarily enjoin the state court's condemnation proceedings.

On March 21, 2024, the County filed its notice of appeal of the federal district court's order "in so far as it determined and adjudged that the [Shorts] are *entitled to a preliminary injunction*." R. Doc. 55, at 1 (emphasis added).[4]

---

[4]In addition to arguing that the district court erred in granting in part the Shorts' motion for preliminary injunction, the County also argues on appeal that the district court erred in denying without prejudice its motion to dismiss. It asserts that the dismissal motion is inextricably intertwined with its interlocutory appeal of the district court's grant of preliminary relief. The notice of appeal, however, limits the County's appeal to the district court's grant of preliminary relief. *See* Fed. R. App. P. 3(c)(6) ("An appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited."). As a result, we will not address the County's argument that the district court erred in denying without prejudice the County's motion to dismiss.

At the parties' behest, the state court considered its jurisdiction over the merits of the Shorts' claims. On April 5, 2024, the state court ordered briefing on two questions: "(1) whether the Court has subject matter jurisdiction to decide in this proceeding the breach[-]of[-]contract and promissory estoppel claims that . . . the Shorts[] have against [the County]; and (2) whether the Shorts have a procedural mechanism by which to assert such claims in this proceeding." R. Doc. 63-1, at 3.

On May 15, 2024, while this federal appeal was pending, the state court issued an order clarifying the scope of its jurisdiction. It determined that the Shorts' breach-of-contract and promissory-estoppel claims were not and could not be before it as part of the administrative appeal of the County's condemnation. The court outlined its understanding of its authority under state law. *See* N.D. Cent. Code § 32-15-21. In sum, the court limited its consideration to the validity of the taking and would leave any damages determination to a jury.

Afterwards, the Shorts moved the federal district court to lift the stay that it had entered based on the state court's refusal to allow them to assert those claims. In response, the County asserted that the Shorts could raise those claims related to the Settlement Agreement and that the state court's order "simply barred them from asserting their breach of contract and promissory estoppel claims as affirmative claims." R. Doc. 67, at 2. Additionally, the County argued that its "interlocutory appeal of the [p]reliminary [i]njunction warrant[ed] a continued stay of this matter." *Id.*

On August 8, 2024, the district court issued a new order denying the Shorts' motion to lift the stay. Although the district court acknowledged its prior statement that "it would lift the stay to permit those claims to proceed," *id.*, if the state court did not allow the Shorts to assert them in the administrative proceeding, it concluded that it "lack[ed] jurisdiction over those issues that are subject to the interlocutory appeal of a preliminary injunction order," *id.* at 3. This was because the appeal "involves

many of the questions presented by the County . . . related to [its] authority to breach the Settlement Agreement without consequence. This issue will directly bear on the breach of contract and promissory estoppel claims the Shorts wish to proceed with in this case." *Id.*

On October 18, 2024, the state court granted summary judgment in favor of the County in the condemnation action. The Shorts argued to the state court that the County "contracted away its ability to use eminent domain proceedings" in the Settlement Agreement, and as a result, the County was barred from bringing the condemnation action. *Short*, No. 04-2023-cv-00010, at 3. The state court addressed the Settlement Agreement. It concluded that the Agreement "clearly . . . does not" "prohibit[] [the] County . . . from acting." *Id.* at 7. It explained:

> Case law is replete with the clear view that a public body cannot contract away its eminent domain authority so as to prohibit future public bodies from exercising that right. Thus, to whatever extent the Shorts are trying to claim that [the] County did not have the authority to act, based upon the . . . [S]ettlement [A]greement, summary judgment is hereby granted in favor of [the] County. The Parties' [S]ettlement [A]greement may relate to good faith but that is an issue for the bench trial.

*Id.* at 7–8.

The state court granted the County summary judgment on the issue of whether the road was a public use but determined the parties would proceed to trial on the issue of the necessity for the public use given the presence of disputed facts.

-8-

## II. *Discussion*

The County's appeal of the district court's preliminary injunction challenges the validity of the Settlement Agreement that the Shorts contend the County breached. According to the County, the district court erred by conducting a "cursory review of the elements of breach of contract" without considering the County's "arguments regarding the validity of such an agreement." Appellant's Br. at i. The County maintains that it could not contract away its power of eminent domain; therefore, the Settlement Agreement has no lawful effect.

"We review the district court's factual findings for clear error, its legal conclusions *de novo*, and the ultimate decision to grant the injunction for abuse of discretion." *Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020) (per curiam). When deciding whether to grant a motion for preliminary injunction, a district court considers "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "Of the four injunctive factors, likelihood of success on the merits is most significant because an injunction cannot issue if there is no chance of success on the merits." *Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507, 517 (8th Cir. 2024) (internal quotation marks and citations omitted). "In considering the likelihood of success on the merits, a movant must show that it has at least a fair chance of prevailing." *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (internal quotation marks omitted).

Here, of the five claims that the Shorts alleged, the district court examined only their breach-of-contract claim to determine their entitlement to preliminary injunctive

-9-

relief.[5] North Dakota requires three elements for a breach-of-contract claim: "(1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." *Bakke v. Magi-Touch Carpet One Floor & Home, Inc.*, 920 N.W.2d 726, 731 (N.D. 2018). "The nonperformance of a contractual duty when it is due is a breach of the contract." *Three Aces Props. LLC v. United Rentals (N. Am.), Inc.*, 952 N.W.2d 64, 69 (N.D. 2020).

"[W]hether an unambiguous written agreement constitutes a valid contract is a question of law for the court." *Jerry Harmon Motors, Inc. v. First Nat'l Bank & Tr. Co.*, 472 N.W.2d 748, 752 (N.D. 1991). "Under N.D.C.C. § 9-08-01, 'Any provision of a contract is unlawful if it is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals.'" *E. Cent. Water Dist. v. City of Grand Forks*, 9 N.W.3d 705, 712 (N.D. 2024). Here, the question is whether the County could lawfully contract away the power of eminent domain. If not, then the Shorts are not likely to succeed on their breach-of-contract claim.

Under "the 'reserved powers' doctrine, . . . certain substantive powers of sovereignty [can]not be contracted away." *United States v. Winstar Corp.*, 518 U.S. 839, 874 (1996) (citing *W. River Bridge Co. v. Dix*, 6 How. 507 (1848) (holding that a State's contracts do not surrender its eminent domain power)). "These powers include a [sovereign's] power . . . to take property through eminent domain." Janice C. Griffith, *Local Government Contracts: Escaping from the Governmental/Proprietary Maze*, 75 Iowa L. Rev. 277, 284 (1990) (cited in *Winstar Corp.*, 518 U.S. at 874 n.20).

> The power of eminent domain is an attribute of sovereignty, and inheres in every independent state. The taking of private property for public use

---

[5]Because the district court limited its analysis to the breach-of-contract claim, we will only examine the Shorts' likelihood of success on that claim.

upon just compensation is so often necessary for the proper performance of governmental functions that the power is deemed to be essential to the life of the state. *It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will.* It is superior to property rights, and extends to all property within the jurisdiction of the state—to lands already devoted to railway use, as well as to other lands within the state.

*State of Georgia v. City of Chattanooga*, 264 U.S. 472, 480 (1924) (emphasis added) (citations omitted); *see also U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 24 n.21 (1977) ("[T]he doctrine that a State cannot contract away the power of eminent domain has been established since *West River Bridge Co. . . .*"); *Contributors to Penn. Hosp. v. City of Philadelphia*, 245 U.S. 20, 23 (1917) ("There can be now, in view of the many decisions of this court on the subject, no room for challenging the general proposition that the States cannot by virtue of the contract clause be held to have divested themselves by contract of the right to exert their governmental authority in matters which from their very nature so concern that authority that to restrain its exercise by contract would be a renunciation of power to legislate for the preservation of society or to secure the performance of essential governmental duties.").

Like the United States Supreme Court, the North Dakota Supreme Court has recognized that "[t]he State's power of eminent domain is one of the hallmarks of sovereignty" that "cannot be . . . contracted away." *Cass Cnty. Joint Water Res. Dist. v. 1.43 Acres of Land in Highland Twp.*, 643 N.W.2d 685, 694 (N.D. 2002) (quoting *City of Chattanooga*, 264 U.S. at 480).

The state court, in granting summary judgment in favor of the County in the condemnation action, followed applicable state and federal precedents. As the state court acknowledged, "[c]ase law is replete with the clear view that a public body cannot contract away its eminent domain authority so as to prohibit future public bodies from exercising that right." *Short*, No. 04-2023-cv-00010, at 7. Our

examination of the relevant precedents confirms this description of the state of the law on this issue.

Therefore, we hold that the district court legally erred in concluding that the Shorts had a fair chance of prevailing on their breach-of-contract claim. Put simply, the County could not contract away its power of eminent domain. Its Settlement Agreement to do so was contrary to law. *See* N.D. Cent. Code § 9-08-01. It certainly could not do so permanently as it could resume its power "at will." *City of Chattanooga*, 264 U.S. at 480. As a result, the district court abused its discretion in preliminarily enjoining the County and its agents from entering the Shorts' property during the pendency of the federal case and the underlying state court appeal. *See Firearms Regul. Accountability Coal., Inc.*, 112 F.4th at 517.

III. *Conclusion*

Accordingly, we vacate the preliminary injunction and remand for further proceedings consistent with this opinion.[6]

———————————————

[6]On April 23, 2025, we asked counsel if the case has been settled based upon press reports to that effect; that counsel then belatedly furnished us with a Settlement Agreement dated April 2, 2025; that the Settlement Agreement does not render this appeal moot; and therefore we are filing the opinion we were prepared to file before April 23, 2025, with no award of costs or attorney's fees to either party.